**United States District Court**
**District of Maine**

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.** *Plaintiff*, v. **MATTHEW DUNLAP,** in his official capacity as the Secretary of State for the State of Maine *Defendant*. | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Public Interest Legal Foundation (the "Foundation"), by its attorneys, brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), because the action seeks injunctive and declaratory relief under the NVRA. This Court may also grant declaratory under 28 U.S.C. § 2201.

2.  Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### PARTIES

3.  The Public Interest Legal Foundation, Inc., (the "Foundation") is a non-partisan, public interest organization incorporated and based in Indianapolis, Indiana. The Foundation

1

seeks to promote the integrity of elections nationwide through research, education, remedial programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure Provision and state and federal open records laws that require government records be made available to the public. Using records and data compiled through these open records laws, the Foundation analyzes the programs and activities of state and local election officials in order to determine whether lawful efforts are being made to keep voter rolls current and accurate. The Foundation also uses records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its organizational mission.

4. Defendant Matthew Dunlap ("Secretary Dunlap") is the Secretary of State for the State of Maine. Secretary Dunlap is Maine's chief election official and "the coordinator of state responsibilities under the National Voter Registration Act of 1993." 21-A M.R.S. § 180.

5. Secretary Dunlap is sued in his official capacity only.

## BACKGROUND

*Maine Law*

6. Title 21-A, Section 196-A of the Maine Revised Statutes governs access to data from Maine's centralized electronic voter registration system (the "CVR").

7. Section 196-A(1) provides that "information contained electronically in the central voter registration system and any information or reports generated by the system are confidential and may be accessed only by municipal and state election officials for the purposes of election and voter registration administration, and by others only as provided in this section."

8. Section 196-A(1)(B) permits certain preferred individuals and entities to purchase a statewide "list or report" of the following "voter record information":

> [T]he voter's name, residence address, mailing address, year of birth, enrollment status, electoral districts, voter status, date of registration, date of change of the voter record if applicable, voter participation history, voter record number and any special designations indicating uniformed service voters, overseas voters or township voters.

21-A M.R.S. § 196-A(1)(B).

9. According to Secretary Dunlap's office, the "list or report" described in paragraph 8 is referred to as the "party/campaign use voter file." Exhibit E at 1.

10. Section 196-A(1)(B) restricts access to the "party/campaign use voter file" to a "political party, or an individual or organization engaged in so-called 'get out the vote' efforts directly related to a campaign or other activities directly related to a campaign, or an individual who has been elected or appointed to and is currently serving in a municipal, county, state or federal office[.]"

11. Those entities and individuals described in paragraph 10 "may purchase" the "party/campaign use voter file" or similar voter list that includes the voter data described in Section 196-A(1)(B) "by making a request to the Secretary of State or to a registrar if the information requested concerns voters in that municipality." *Id*.

12. No other individual and entity may inspect, purchase, or otherwise receive the "party/campaign use voter file" or similar voter list that includes the voter data described in Section 196-A(1)(B). *See id*.; Exhibit E at 1.

13. Section 196-A(1)(B) prohibits those individuals and entities who receive the "party/campaign use voter file" or similar voter list that includes the voter data described in Section 196-A(1)(B) from using it "for any purpose that is not directly related to activities of a political party, 'get out the vote' efforts directly related to a campaign or other activities directly related to a campaign."

*The NVRA's Public Disclosure Provision*

14.The NVRA provides, in relevant part, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

15.The Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012).

16.The Public Disclosure Provision is designed to "ensure that election officials are fulfilling their list maintenance duties" and is "available to any member of the public." *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12 (S.D. Fla. Mar. 30, 2018). The Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. Accordingly, election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls." *Id*. at *12-13.

*Defendant is Denying the Foundation Access to Maine's Statewide Voter Registration List*

17.On October 17, 2019, the Foundation emailed a letter to Secretary Dunlap. The letter requested an electronic copy of Maine's statewide voter registration list pursuant to the NVRA's Public Disclosure Provision. Exhibit A.

18. The letter acknowledged that 21-A M.R.S. § 196-A(1)(B) appears to prohibit the Foundation from receiving the requested voter registration list and from using it for the Foundation's intended purposes. Exhibit A.

19. The letter further explained that the NVRA, as a federal enactment, supersedes and preempts Maine law and therefore a denial of the Foundation's request would violate the NVRA. Exhibit A.

20. On October 17, 2019, the Foundation received an email from Kristen Muszynski, Director of Communications for the Department of the Secretary of State denying the Foundation's request. Exhibit B. The email explained:

> Our office is in receipt of your letter. You are correct that Maine law prohibits the disclosure of the voter registration list to your organization and for your purposes. Further response/ comment on current Maine law is beyond my scope. If you would like to contact the Maine attorney general's office to voice your concern about an existing Maine law, that would be the appropriate venue.

*Id.*

21. On October 29, 2019, the Foundation sent a letter to Secretary Dunlap via email and certified mail through United States Postal Service (the "Notice Letter," Exhibit C). The Maine Attorney General was copied on the correspondence.

22. The Notice Letter notified Secretary Dunlap that he is in violation of the NVRA for failure to permit inspection of voter list maintenance records as required by 52 U.S.C. § 20507(i). Exhibit C at 1.

23. The Notice Letter further notified Secretary Dunlap that if the violation of the NVRA was not cured within 90 days, a lawsuit may be filed against him, as permitted by the NVRA, 52 U.S.C. § 20510(b). Exhibit C at 1.

24. The Foundation received no response from Secretary Dunlap or any other person at Maine Secretary of State's office following service of the Notice Letter.

25. On January 29, 2020, the Foundation sent another letter to Secretary Dunlap (the "Final Letter," Exhibit D). The Final Letter notified Secretary Dunlap that the 90-day curative period afforded by the NVRA, 52 U.S.C. § 20510(b), would expire on Sunday, February 2, 2020, at the latest. Exhibit D at 1.

26. The Final Letter also notified Secretary Dunlap that if he continues to deny access to the requested records beyond February 2, 2020, the Foundation will pursue legal remedies through litigation. Exhibit D at 1.

27. On January 31, 2020, the Foundation received a letter from Julie L. Flynn, Deputy Secretary of State for the State of Maine. Exhibit E. The letter explained that the voter registration list described in 21-A M.R.S. § 196-A(1)(B) is known as the "party/campaign use voter file." Exhibit E at 1.

28. Deputy Secretary Flynn's letter confirmed that the Foundation's request for the statewide "party/campaign use voter file" is being denied because the Foundation "is not engaged in a campaign or 'get out the vote' effort." Exhibit E at 1.

29. The letter also explained that "state law does not allow us to provide you with an electronic copy of the CVR database, or any report in electronic form generated by the CVR other than as described in section 196-A(l)(D) or (F)." Exhibit E at 2.

30. The letter asked the Foundation to "describe, with greater specificity, what records (or data fields) you would like to inspect that you believe are within the scope of NVRA section 8(i)." Exhibit E at 2.

31. On February 3, 2020, the Foundation sent a response via email to Deputy Secretary Flynn's letter, copying Secretary Dunlap and his counsel on the correspondence. Exhibit F. The Foundation's letter reiterated that the Foundation is "seeking the list and fields of

data described in 21-A M.R.S § 196-A(1)(B), *i.e.*, what your most recent letter refers to as the 'party/campaign use voter file.'" Exhibit F at 1.

32. The Foundation asked Secretary Dunlap "to confirm by 2:00 pm EST on February 4, 2020 whether you will permit us to inspect and duplicate (or otherwise purchase and receive) the 'party/campaign use voter file' with the data fields described by 21-A M.R.S § 196-A(1)(B)."

33. On February 5, 2020, Deputy Secretary Flynn sent a response via email to the Foundation. Exhibit G. The letter confirmed that the Foundation's request for the voter registration list described in 21-A M.R.S § 196-A(1)(B) is denied. *Id*.

## COUNT I
## Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)

34. The Foundation realleges the preceding paragraphs as if fully stated herein.

35. The requested record(s) are in the possession, custody, and control of the Defendant.

36. The voter registration list described in 21-A M.R.S § 196-A(1)(B)—otherwise known as the "party/campaign use voter file"—is a record covered by the Public Disclosure Provision of the NVRA, 52 U.S.C. § 20507(i). *See Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 438-442, 446 (D. Md. 2019); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014) ("The Court likewise concludes that the Voter Roll is a 'record' and is the 'official list[] of eligible voters' under the NVRA Public Disclosure Provision."); *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *13 (S.D. Fla. Mar. 30, 2018) ("[E]lection officials must provide full public access to all records related to their list maintenance activities, including their voter rolls.").

37. The Public Disclosure Provision authorizes and entitles the Foundation to inspect and copy, or otherwise purchase and receive, the voter registration list described in 21-A M.R.S § 196-A(1)(B)—otherwise known as the "party/campaign use voter file."

38. Maine law requires that a person requesting a list of registered voters described in 21-A M.R.S § 196-A(1)(B) to be either a "political party, or an individual or organization engaged in so-called 'get out the vote' efforts directly related to a campaign or other activities directly related to a campaign, or an individual who has been elected or appointed to and is currently serving in a municipal, county, state or federal office[.]" 21-A M.R.S. § 196-A(1)(B).

39. Secretary Dunlap is enforcing this requirement and is therefore preventing the Foundation from inspecting and copying records that the Foundation is otherwise entitled to inspect and copy under the NVRA.

40. Maine law also prohibits those who receive the voter registration list described in 21-A M.R.S § 196-A(1)(B)—otherwise known as the "party/campaign use voter file"—from using it "for any purpose that is not directly related to activities of a political party, 'get out the vote' efforts directly related to a campaign or other activities directly related to a campaign." 21-A M.R.S. § 196-A(1)(B).

41. The Foundation intends to use the requested voter registration list for reasons not related to the purposes contained in 21-A M.R.S. § 196-A(1)(B)—namely, research, analysis, and commentary.

42. By denying the Foundation the ability to obtain records it otherwise could obtain under the Public Disclosure Provision of the NVRA, 21-A M.R.S. § 196-A conflicts with federal law.

43. By denying the Foundation the ability to use records for a purpose not prohibited by federal law and for a purpose for which the NVRA was enacted, 21-A M.R.S. § 196-A conflicts with federal law.

44. Any Maine statute, regulation, practice or policy that conflicts with, overrides, or burdens the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States.

45. Maine's disclosure and use restrictions found in 21-A M.R.S. § 196-A are therefore preempted, invalid, and unenforceable.

46. Defendant's refusal to provide the requested voter registration list to the Foundation violates the NVRA.

47. The Foundation provided Defendant—the chief election official of Maine—with written notice of the NVRA violation alleged herein, thereby satisfying the NVRA's pre-litigation notice requirement, 52 U.S.C. § 20510(b)(1). *See* Exhibit C.

48. Defendant has not cured his violation of the NVRA within the 90 days permitted by the NVRA. *See* 52 U.S.C. § 20510(b)(2).

49. Defendant's violation of the NVRA is causing the Foundation to suffer a concrete informational injury because the Foundation does not have records and information to which it is entitled under federal law. *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute").

50. By denying the Foundation the ability to obtain the requested voter registration list, Maine is impairing the Foundation's ability to assess the accuracy of Maine's voter roll and to determine whether people from other states are voting in Maine elections and vice versa.

51. Defendant's violation of the NVRA is thus frustrating, impeding and harming the efforts of the Foundation to carry out its organizational mission.

52. The Foundation will continue to be injured by the Defendant's violations of the NVRA unless and until the Defendant is enjoined from continuing to violate the law.

53. The Foundation is a person aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

1. Declaring that Defendant is in violation of Section 8(i) of the NVRA by refusing to allow the Foundation to inspect and copy the requested voter registration list;

2. Declaring that Section 8(i) of the NVRA preempts and supersedes any requirement or restriction in 21-A M.R.S. § 196-A, and any other Maine statute, regulation, practice or policy that prevents the Foundation from inspecting and copying the requested voter registration list or that places restrictions on the use of Maine's voter registration lists;

3. Ordering Defendant to produce to the Foundation the statewide voter registration list described in 21-A M.R.S § 196-A(1)(B)—otherwise known as the "party/campaign use voter file"—or otherwise ordering Defendant to allow the Foundation to inspect and copy the same information.

4. Permanently enjoining Defendant from denying requests to inspect similar voter registration lists in the future;

5. Ordering the Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

6. Granting the Foundation further relief that this Court deems just and proper.

Dated: February 19, 2020.

For the Plaintiff Public Interest Legal Foundation:

/s/ *Stephen C. Whiting*_____
Stephen C. Whiting,  Maine Bar No. 559
The Whiting Law Firm
75 Pearl Street, Ste. 207
Portland, ME  04101
Tel: (207) 780-0681
Fax: (207) 780-0682
steve@whitinglawfirm.com

Noel H. Johnson* (Wisconsin Bar #1068004)
Kaylan L. Phillips* (Indiana Bar #30405-84)
Public Interest Legal Foundation, Inc.
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org
*\* Motion for admission pro hac vice forthcoming*

*Attorneys for Plaintiff Public Interest Legal Foundation*