**United States District Court**
**District of Maine**

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.**<br><br>*Plaintiff,*<br><br>v.<br><br>**SHENNA BELLOWS,** in her official capacity as the Secretary of State for the State of Maine<br><br><br>*Defendant.* | Case No. 1:20-cv-00061-GZS |

**Plaintiff Public Interest Legal Foundation's**
**Motion for Summary Judgment and Memorandum of Law**

## **Table of Contents**

Table of Authorities .................................................................................................. ii

Introduction ............................................................................................................. 1

Summary of Undisputed Material Facts ................................................................. 3

Argument ................................................................................................................. 4

    I.     Summary Judgment Standard ............................................................ 4

    II.   The Foundation is Entitled to Summary Judgment ........................... 5

         A.  The Foundation Requested the Voter File
            and the Secretary Denied the Foundation's Request ................... 5

         B.  The Secretary's Denial of Access to the Voter File
            Violates the NVRA ...................................................................... 5

              1.  The Voter File is Subject to Public Disclosure Under the Plain
                 and Unambiguous Terms of the NVRA ........................................... 5

                  a.  The Voter File is a "Record" ..................................... 6

                  b.  The Voter File "Concern[s]" the "Implementation of
                     Programs and Activities Conducted for the Purpose of
                     Ensuring the Accuracy and Currency of Official Lists
                     of Eligible Voters[.]" ................................................ 7

                     i.      The Voter File Reflects and Is the End-Product
                           of Maine's Voter List Maintenance Activities ............ 10

                     ii.     The Voter File is a Compilation of Voter
                           Registration Records, Which Maine Uses to
                           Determine Eligibility to Vote ...................................... 12

              2.  Disclosure of the Voter File is Consistent with
                 Congress's Intent ........................................................... 14

         C.  Maine Law is Preempted and Superseded by the NVRA ........................ 15

Conclusion ............................................................................................................. 19

## Table of Authorities

*Cases*

*ACORN v. Edgar*,
  880 F. Supp. 1215 (N.D. Ill. 1995) ...................................................................17

*Arizona v. Inter Tribal Council of Arizona*,
  570 U.S. 1 (2013)............................................................................... 2, 16-17

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
  178 F.3d 350 (5th Cir. 1999) ....................................................................15

*Bellitto v. Snipes*,
  No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617 (S.D. Fla. Mar. 30, 2018)....2, 15, 18

*Bennett v. Spear*,
  520 U.S. 154 (1997)....................................................................................15

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)......................................................................................6

*Ex parte Siebold*,
  100 U. S. 371 (1880).................................................................................2, 16

*Freightliner Corp. v. Myrick*,
  514 U.S. 280 (1995)....................................................................................18

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992)......................................................................................18

*Judicial Watch, Inc. v. Lamone*,
  399 F. Supp. 3d 425 (D. Md. 2019).......................................2, 13-14, 17-18

*Judicial Watch, Inc. v. Lamone*,
  455 F. Supp. 3d 209 (D. Md. 2020) ......................................................13 n.5

*Latin Am. Music Co. v. Archdiocese*,
  499 F.3d 32 (1st Cir. 2007)......................................................................4-5

*Project Vote, Inc. v. Kemp*,
  208 F. Supp. 3d 1320 (N.D. Ga. 2016).......................................................6

*Project Vote/Voting for Am., Inc. v. Long*,
  752 F. Supp. 2d 697 (E.D. Va. 2010) ........................................................9

*Project Vote/Voting for Am., Inc. v. Long*,
  813 F.Supp.2d 738 (E.D. Va. 2011) .........................................................17

*Project Vote / Voting for Am., Inc. v. Long*,
  682 F.3d 331 (4th Cir. 2012) ...............................................................13, 19

*True the Vote v. Hosemann*,
  43 F. Supp. 3d 693 (S.D. Miss. 2014)...................................................2-14

*Statutes and Rules*

21-A M.R.S. § 1(47-A) ..................................................................................8 n.4

21-A M.R.S. § 161(2-A) ...................................................................................13

21-A M.R.S. § 161(2-A)(A)-(B) ........................................................................8

21-A M.R.S. § 128(1) ........................................................................................9

21-A M.R.S. § 129(1)-(2) ..................................................................................8

21-A M.R.S. § 152(2) ........................................................................................7

21-A M.R.S. § 196-A(1) ...................................................................................15

21-A M.R.S. § 196-A(1)(B) ........................................3, 5-6, 10, 14-16, 18

52 U.S.C. § 20501(b)(3) ....................................................................... 15, 17-18

52 U.S.C. § 20501(b)(4) ....................................................................... 15, 17-18

52 U.S.C. § 20507(i)(1) ......................................... 1, 5-7, 9, 13, 17, 17 n.6

Local Rule 56 .....................................................................................................1

Fed. R. Civ. P. 56 ...............................................................................................1

Fed. R. Civ. P. 56(c) ..........................................................................................5

*Other Authorities*

Merriam-Webster Dictionary, https://www.merriam-
webster.com/dictionary/concerns?src=search-dict-hed .....................................9

Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/record ..6 n.2

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, Plaintiff Public Interest Legal Foundation ("Foundation"), hereby moves for summary judgment on its one-count Complaint. (Doc. 1.) The Foundation respectfully submits that there are no issues of material fact genuinely in dispute and the Foundation is entitled to judgment as a matter of law.

## Introduction

This is a case for declaratory and injunctive relief under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501-20511. With two irrelevant exceptions, section 20507(i)(1) of the NVRA acts like a federal freedom of information law, requiring election administration officials to "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").[1]

Nearly a year and a half ago, the Foundation sought, pursuant to the NVRA's Public Disclosure Provision, to inspect (or receive) a record in the Secretary's possession concerning Maine's activities conducted to keep Maine's official voter list current and accurate. In fact, the Foundation sought what is perhaps the most fundamental example of such a record—the list of eligible voters itself with affiliated data, or as it is known in Maine, the "Party/Campaign Use Voter File" (hereafter, the "Voter File"). Yet the Secretary denied the Foundation's request, citing Maine law that limits disclosure of the Voter File to certain preferred persons and entities.

The Foundation's right to receive the Voter File is not a close call. It is undisputed that Maine conducts various voter list maintenance activities, including creating new voter

---

[1] "[P]rograms and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" are referred to as "voter list maintenance" programs or activities.

registration records, updating data for existing registrants (*e.g.*, address, surname), and cancelling voter registration records. Each activity is conducted to keep Maine's official list of eligible voters accurate and current. Each of these activities is also collectively reflected in the Voter File. Simply put, the Voter File is the culmination and end product of the implementation of Maine's voter list maintenance activities. The Voter File thus falls squarely within the NVRA's broad disclosure command for this reason alone. The Voter File is also a compilation of individual voter registration records and reflects actions taken that the Secretary uses to track, monitor, and determine who belongs on the official list of eligible voters. As such, the Voter File plainly concerns the Secretary's voter list maintenance programs. *See Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) (holding Maryland voter roll is a record covered by NVRA).

Maine law prohibiting disclosure to the Foundation does not and cannot change the result here because the NVRA is superior to any conflicting state law under the Constitution's Supremacy Clause. *See Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013). In such situations, "the state law, 'so far as the conflict extends, ceases to be operative.'" *Id*. at 9 (quoting *Ex parte Siebold*, 100 U. S. 371, 384 (1880)). The Voter File's access and use limitations are thus unenforceable under the Constitution's Supremacy Clause. This Court should therefore join the other courts and hold that a state's voter roll is a record subject to public disclosure under the NVRA. *See Judicial Watch*, 399 F. Supp. 3d 425; *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014); *see also Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12-13 (S.D. Fla. Mar. 30, 2018) ("[E]lection officials must provide full public access to all records related to their list maintenance activities, including their voter rolls.").

Congress made *all* voter list maintenance records subject to public inspection precisely so that election administration is transparent. That cannot happen in Maine because the Secretary is concealing her voter roll and maintenance from public inspection. The Secretary cannot overcome the plain and unambiguous language of the NVRA or its preemptive effect. Judgment should therefore enter in the Foundation's favor.

### Summary of Undisputed Material Facts

1.      Maine's Voter File is a report generated from Maine's Central Voter Registration System ("CVR") that contains the following voter record information for each registered voter who is eligible to vote in Maine as of the date the report is generated:

> [T]he voter's name, residence address, mailing address, year of birth, enrollment status, electoral districts, voter status, date of registration, date of change of the voter record if applicable, voter participation history, voter record number and any special designations indicating uniformed service voters, overseas voters or township voters.

21-A M.R.S. § 196-A(1)(B); Statement of Material Facts ("SMF") ¶¶ 3-6.

2.      The Foundation requested a copy of Maine's Voter File pursuant to the NVRA's Public Disclosure Provision. Joint Stipulation of Material Facts (Doc. 34) ¶¶ 1, 8 ("Stipulation"); Doc. 1-1.

3.      The Secretary denied the Foundation's request for the Voter File. Stipulation ¶¶ 2, 9; Docs. 1-2, 1-5, and 1-7.

4.      As required by 52 U.S.C. § 20510(b), prior to filing this action, the Foundation notified the Secretary in writing that her office is in violation of the NVRA for failure to permit inspection and duplication of records as required by the NVRA's Public Disclosure Provision. Stipulation ¶ 3; Doc. 1-3 at 1.

5.      The Secretary did not cure her violation of the NVRA in the time afforded by the NVRA. *See* Stipulation ¶¶ 6-9; SMF ¶¶ 19-30.

6.      Maine has programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. SMF ¶ 36.

7.      The CVR is used to carry out Maine's programs and activities conducted to keep the voter list current and accurate, including creating new voter registration records, making changes and updates to voter record information, canceling a voter registration record, and maintaining voter participation history. SMF ¶ 37.

8.      The CVR is used to generate the Voter File. SMF ¶ 38.

9.      The voter record information contained in the Voter File is derived and pulled from the voter record information stored in the CVR database tables for each eligible registrant. SMF ¶ 39.

10.     The Voter File "captures data on voters who are eligible to vote in Maine as of the date the report is generated." SMF ¶ 40.

11.     When voter record information is added, updated, changed, or deleted in the CVR database, those changes are reflected in the Voter File the next time it is generated. SMF ¶ 41.

12.     The voter record information contained in the Voter File is current as of the date the Voter File is generated. SMF ¶ 42.

## Argument

## I.      Summary Judgment Standard

"Summary judgment is appropriate when the facts properly supported by the record and taken in the light most favorable to the non-moving party 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Latin*

4

*Am. Music Co. v. Archdiocese*, 499 F.3d 32, 38 (1st Cir. 2007) (quoting Fed. R. Civ. P. 56(c)).

"Cross motions for summary judgment do not change the standard." *Id*.

II.   **The Foundation is Entitled to Summary Judgment.**

    A.  **The Foundation Requested the Voter File and the Secretary Denied the Foundation's Request.**

It is undisputed that the prior to the filing of this litigation, the Foundation requested from the Secretary Maine's "Party/Campaign Use Voter File," which is described in Title 21-A, Section 196-A(1)(B) of Maine Revised Statutes. Stipulation ¶ 8. The Foundation's request was made pursuant to the NVRA's Public Disclosure Provision. SMF ¶¶ 12-13. It is also undisputed that the Secretary denied the Foundation's request for Maine's Voter File. Stipulation ¶ 9. These facts are not genuinely in dispute.

    B.  **The Secretary's Denial of Access to the Voter File Violates the NVRA.**

        1.  **The Voter File is Subject to Public Disclosure Under the Plain and Unambiguous Terms of the NVRA.**

On its face, the NVRA's Public Disclosure Provision is a broad mandate, requiring public disclosure of "**all records** concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (emphasis added). The Voter File—a record that captures and reflects the most current maintenance of all voter record information—falls squarely within the scope of this disclosure command.

The starting point for any issue of statutory interpretation is the language of the statute itself. The Supreme Court instructs that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). "When the words of a statute are unambiguous, then, this first canon is also

the last: judicial inquiry is complete." *Id*. at 254 (citations and quotations omitted). The text of the Public Disclosure Provision is unambiguous: "Each state … shall make available for public inspection ... *all records* concerning the implementation of *programs and activities* conducted for the purpose of ensuring the *accuracy and currency* of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added). All records concerning activities conducted by the Secretary to make voter registration information current and accurate are subject to public disclosure, period. The records the Foundation is seeking are records subject to inspection and disclosure by the plain text of the statute.

### a. The Voter File is a "Record."

The Secretary cannot genuinely dispute that the Voter File is a "record" under the NVRA's Public Disclosure Provision. Because the NVRA does not define "record," the court considers the common and ordinary meaning of the term. *See Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1335 (N.D. Ga. 2016) (interpreting meaning of "record" in NVRA). The Merriam-Webster Dictionary defines record as "a body of known or recorded facts about something or someone" and "a collection of related items of information (as in a database) treated as a unit."[2] The Voter File is a "list" or "report" of "voter *record* information" (*e.g.*, name and address) for all eligible voters in Maine. 21-A M.R.S. § 196-A(1)(B) (emphasis added). It is both a "body of known [and] recorded facts" about each eligible voter and "a collection of related items of information" about each eligible voter "treated as a unit." The Voter File is therefore plainly a "record" under the plain meaning of the term.

---

[2] https://www.merriam-webster.com/dictionary/record (last accessed March 19, 2021).

It makes no difference that the Voter File is generated and distributed in an electronic format[3] because the NVRA requires disclosure of "all records," not just physical records. 52 U.S.C. § 20507(i)(1). As the Northern District of Georgia prudently recognized, "Interpreting 'records' to exclude information contained within electronic databases … would allow States to circumvent their NVRA disclosure obligations simply by choosing to store information in a particular manner. Given the ubiquity and ease of electronic storage, this would effectively render Section 8(i) a nullity." *Project Vote, Inc.*, 208 F. Supp. 3d at 1336.

> **b. The Voter File "Concern[s]" the "Implementation of Programs and Activities Conducted for the Purpose of Ensuring the Accuracy and Currency of Official Lists of Eligible Voters[.]"**

The Secretary acknowledges that Maine has programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. SMF ¶ 36. The CVR is used to carry out these programs and activities. SMF ¶ 37.

One of Maine's voter list maintenance activities is creating new voter registration records for people who are not registered to vote. SMF ¶ 37. When the Secretary or a local election official receives an application for voter registration, Maine law requires that the applicant's name and other information be entered into the CVR as expeditiously as possible. 21-A M.R.S. § 152(2). When a voter registration applicant's information is entered into the CVR software application, it is saved in the CVR database tables. Exhibit A to Affidavit of Noel H. Johnson ("Johnson Aff.") at 40:18-41:6 ("there's a table that contains the name information, there's a table that contains the voting address, physical residence address information, there's a table for mailing address, there's tables for, you know, party enrollment, history tables").

---

[3] *See* Exhibit C to Johnson Aff. at Interrogatory No. 7.

Another of Maine's voter list maintenance activities is making changes and updates to voter record information stored in the CVR database tables. SMF ¶ 37. Maine law requires registrants to "give written notice to the registrar of the voter's new and former names or addresses before the close of registrations prior to election day" and the registrar must "correct the voter's name or address in the central voter registration system…." 21-A M.R.S. § 129(1)-(2); Exhibit A to Johnson Aff. at 43:17-21. In other words, if a registered voter submits a voter registration application indicating a change of name or address, officials must use the CVR application to update the registrant's information in the CVR database. *Id*. at 42:12-16. The CVR is also used to affect changes and updates to all other voter record information in the CVR database tables, such as date of birth or party affiliation. *Id*. at 43:22-44:8.

Another of Maine's voter list maintenance activities is canceling voter registration records. SMF ¶ 37. Maine law requires cancellation of a voter registration record when the registrant moves to another jurisdiction in or outside Maine. 21-A M.R.S. § 161(2-A)(A)-(B). Election officials will also cancel a registration record using the CVR when the registrant dies, Exhibit A to Johnson Aff. at 45:21-46:1; 47:7-10, or is in inactive status and fails to vote for two consecutive general elections, *id*. at 47:11-48:4, and when a registrant requests that his or her registration record be canceled, *id*. at 48:9-15. When a registration record is canceled, the status of the registrant is changed in the registrant's CVR record. *Id*. at 48:19-23.

Maine also uses the CVR to add, update, or delete voter participation history,[4] which is maintained in a CVR database table in each voter's record. SMF ¶ 37.

---

[4] "'Voter participation history' means the indication in the central voter registration system of whether a voter has cast a ballot in a certain election, as reflected on the incoming voting list for that election." 21-A M.R.S. § 1(47-A). This list maintenance record is important to establish whether a registrant is properly or improperly removed for, in part, inactivity.

In addition, Maine law also requires that "[b]efore printing the final incoming voting list prior to any election … [t]he registrar shall review the records of marriage, death, change of name and change of address in the office of the clerk or the assessors or as provided by the Department of Health and Human Services, Office of Vital Records or the Department of the Secretary of State, Bureau of Motor Vehicles and shall revise the central voter registration system accordingly." 21-A M.R.S. § 128(1).

Interpreting the plain meaning of the NVRA's terms, the Eastern District of Virginia concluded that "a program or activity covered by the Public Disclosure Provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified or entitled to vote within the state." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 706 (E.D. Va. 2010); *see also True the Vote*, 43 F. Supp. 3d at 719-20 ("A list of voters is 'accurate' if it is 'free from error or defect' and it is 'current' if it is 'most recent.'") (citations omitted). Each of Maine's activities described above is a "program" or "activity" within the purview of the NVRA because it is conducted to make sure Maine's registration records and eligible voter list are "errorless" and contain the "most recent" information for each registrant.

The remaining question for the Court is whether the Voter File "concern[s]" Maine's voter list maintenance programs. 52 U.S.C. § 20507(i)(1). The common and ordinary meaning of the word "concern" is "to relate to." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/concerns?src=search-dict-hed (last accessed March 19, 2021). The Voter File plainly relates to Maine's voter list maintenance programs in at least two ways.

i.   **The Voter File Reflects and Is the End-Product of Maine's Voter List Maintenance Activities.**

The Voter File contains the following voter record information for each registered voter who is eligible to vote in Maine as of the date the file is generated:

> [T]he voter's name, residence address, mailing address, year of birth, enrollment status, electoral districts, voter status, date of registration, date of change of the voter record if applicable, voter participation history, voter record number and any special designations indicating uniformed service voters, overseas voters or township voters.

21-A M.R.S. § 196-A(1)(B); SMF ¶¶ 5, 35, 39-40. Each piece of voter record information contained in the Voter File is stored and maintained in a table in the CVR database. SMF ¶¶ 5, 35, 39. Again, the information maintained in the CVR database is changed through the implementation of Maine's voter list maintenance programs and activities. SMF ¶¶ 35-37. The Voter File is generated using the CVR software application. SMF ¶ 38. The voter record information contained in the generated Voter File is derived and pulled from the voter record information stored in the CVR database tables for each voter. SMF ¶ 38. For example, the name for each eligible voter that is stored in the CVR database will appear on the Voter File when the user generates it. The Voter File "captures data on voters who are eligible to vote in Maine as of the date the report is generated" and that data is current as of the date it is generated. SMF ¶ 40, 42. At the time it is generated the Voter File reflects and contains the "most recent" voter record information stored in the CVR database tables for eligible voters. The Voter File is the culmination and end product of the implementation of Maine's voter list maintenance activities. The Voter File squarely "concerns" Maine's voter list maintenance activities and therefore falls within the scope of the NVRA's Public Disclosure Provision.

The following hypothetical—proposed to the Secretary's Rule 30(b)(6) designee in deposition—reinforces this conclusion:

23· ·example.· Let's say that today, you used the CVR to

24· ·generate the Party/Campaign Use Voter File and you look at

25· ·that file -- the voter file and the first person on the

1· ·list is Jane Doe and the voter file says that Jane Doe is

·2· ·registered at 1234 Main Street.· Do you follow me so far?

·3· · · ·A· · I guess.· We will see.

·4· · · ·Q· · If I'm not making sense, I will back up.· And a

·5· ·week later, Jane Doe gets married and she decides to

·6· ·legally change her name -- her last name and move into her

·7· ·husband's house, so then Jane Doe then submits a voter

·8· ·registration application under her new last name of Smith

·9· ·and using her new address of 1234 State Street.· Does that

10· ·make sense so far?

11· · · ·A· · Yes, I'm sorry, yes.

12· · · ·Q· · The CVR would be used to update Jane's

13· ·registration record to reflect her new last name and her

14· ·new address, correct?

15· · · ·A· · Yes.

16· · · ·Q· · After those updates are made and take effect in

17· ·the CVR, you again use the CVR to generate a new copy of

18· ·the Party/Campaign Use Voter File.· Would the new copy of

19· ·the Party/Campaign Use Voter File that you just generated

20· ·now list Jane's new last name and address?

11

21· · · ·A· · That's correct.

22· · · ·Q· · It would reflect the changes she made on her voter

23· ·registration application, correct?

24· · · ·A· · Yes.

25· · · ·Q· · So is it correct to say that when changes and

·1· ·updates are made to an individual voter registration record

·2· ·like with Jane Doe, that those updates are then reflected

·3· ·on the Party/Campaign Use Voter File the next time it is

·4· ·generated?

·5· · · ·A· · The Party/Campaign Use Voter File will reflect the

·6· ·current data for each voter on the date that the applica --

·7· ·that the file is generated, so it would show under the new

·8· ·name and the new address.

Exhibit A to Johnson Aff. at 54:22-56:8. The Voter File reflects—and therefore "concern[s]" and "relates to"—Maine's activities conducted to keep each eligible voter's official information current and accurate—here, a change to the voter's name and address. There is no credible argument to the contrary.

> ### ii.  The Voter File is a Compilation of Voter Registration Records, Which Maine Uses to Determine Eligibility to Vote.

The Voter File "captures data on voters who are eligible to vote in Maine as of the date the report is generated." SMF ¶ 40. It is the most recent list of eligible voters. When generated, then, the Voter File is simply a compilation of the official and most recent voter registration records containing list maintenance records of all eligible registrants.

12

Maine law requires that voter registration records in the CVR must be kept current. 21-A M.R.S. § 161(2-A). Keeping the CVR current includes keeping each registrant's information accurate. Exhibit A to Johnson Aff. at 23:23-24:14. Keeping that information accurate is an "activity" within the scope of the NVRA because it is done to "ensur[e] the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1).

*Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) resolved the same question at issue here. In *Judicial Watch*, the court granted summary judgment, holding a list of Maryland's registered voters is a "record" covered by the NVRA's Public Disclosure Provision. Plaintiffs sought production of the voter registration list for Montgomery County, Maryland. *Judicial Watch*, 399 F. Supp. 3d at 434-445. The court explained,

> In Maryland, State and local officials rely on voter registrations to register new voters and to remove ineligible voters, thereby "'ensuring the accuracy and currency of official lists of eligible voters.'" [*Project Vote / Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012)] (internal citation omitted). And, the voter registrations are clearly records that concern the implementation of the program and activity of maintaining accurate and current eligible voter lists. After all, they contain the information on which Maryland election officials rely to monitor, track, and determine voter eligibility.

*Judicial Watch*, 399 F. Supp. 3d at 439. Because "a voter list is simply a pared down compilation of voter registrations," *id*. at 440, the court reasoned, it is likewise a "record" covered by the NVRA's Public Disclosure Provision, *id*. at 440-442.[5]

The Voter File is likewise a "compilation of voter registrations." *Id*. at 440. Indeed, the information contained in the Voter File is pulled directly from the official voter record information stored in the CVR database tables. Exhibit A to Johnson Aff. at 52:18-54:13, the information that election officials endeavor to keep current and "on which [Maine] election

---

[5] The court ultimately concluded that the NVRA also requires disclosure of birthdate information. *Judicial Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209 (D. Md. 2020).

officials rely to monitor, track, and determine voter eligibility." *Judicial Watch*, 399 F. Supp. 3d

at 439. The Voter File is likewise a record covered by the NVRA.

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014) also supports the

Foundation. In that case, the plaintiff sought a "a complete list of all Mississippi voters [in] all

status categories" *Id*. The court observed,

> Mississippi has an electronic election recordkeeping system, SEMS, that contains
> its Voter Roll information. The Voter Roll is created from data in SEMS and is
> maintained by the State. Counties receive voter registration applications from
> individual registrants and must scan the applications and other pertinent registration
> documentation into SEMS. …
>
> The Court likewise concludes that the Voter Roll is a "record" and is the "official
> list[] of eligible voters" under the NVRA Public Disclosure Provision. The process
> of compiling, maintaining, and reviewing the voter roll is a program or activity
> performed by Mississippi election officials that ensures the official roll is properly
> maintained to be accurate and current.

*Id*.

The same is true here. Maine has an electronic election record keeping system—the

CVR. SMF ¶¶ 33-34. The Voter File is created from data in the CVR. SMF ¶ 34. The Voter File

contains various voter record information stored in the CVR for each eligible registrant,

including name and address and is a list of all eligible voters in Maine at the time it is generated.

21-A M.R.S. § 196-A(1)(B); SMF ¶ 39-40. SMF ¶ 40. "The process of compiling, maintaining,

and reviewing" the Voter File is an activity performed by Maine election officials "that ensures

the official roll is properly maintained to be accurate and current." *True the Vote*, 43 F. Supp. 3d

at 723. The Voter File is a "record" of that activity and thus covered by the NVRA.

## 2.   Disclosure of the Voter File is Consistent with Congress's Intent.

To find that the Voter File is not within the scope of the NVRA would frustrate the intent

of Congress. The NVRA was enacted for four purposes, including "to protect the integrity of the

electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). The NVRA's Public Disclosure Provision reflects Congressional intent by allowing the public to monitor the activities of government as they concern the right to vote:

> [The NVRA's Public Disclosure Provision is] available to **any member of the public** ... and convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. [52 U.S.C. § 20507(i)]. Accordingly, **election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls.** *Id.* This mandatory public inspection right is designed to preserve the right to vote and ensure that election officials are complying with the NVRA. *Project Vote v. Long*, 682 F.3d. 331, 335 (4th Cir. 2012).

*Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12-13 (S.D. Fla. Mar. 30, 2018) (emphasis added). Indeed, Congress made *all* list maintenance records subject to public inspection precisely so that the public can enjoy a transparent election process and assess compliance with federal laws. *Ass'n of Cmty. Orgs. for Reform Now v. Fowler,* 178 F.3d 350, 364 (5th Cir. 1999) (private-right-of action meant to "encourage enforcement by so-called 'private attorneys general'" (quoting *Bennett v. Spear*, 520 U.S. 154, 157 (1997)). To find otherwise frustrates the provision's central purpose.

### C.  Maine Law is Preempted and Superseded by the NVRA.

"[I]nformation contained electronically in the central voter registration system and any information or reports generated by the system are confidential and may be accessed only by municipal and state election officials for the purposes of election and voter registration administration, and by others only as provided in this section." 21-A M.R.S. § 196-A(1).

Yet Section 196-A(1)(B) provides that the Voter File may be obtained from the Secretary upon request by a "political party, or an individual or organization engaged in so-called 'get out the vote' efforts directly related to a campaign or other activities directly related to a campaign,

or an individual who has been elected or appointed to and is currently serving in a municipal, county, state or federal office" (hereafter, the "Access Limitation"). 21-A M.R.S. § 196-A(1)(B). No other individual and entity may inspect, purchase, or otherwise receive the Voter File. *See id.*; SMF ¶ 7-9, 17; Exhibit A to Johnson Aff. at 51:8-17. In other words, this purportedly confidential information can nevertheless be disclosed to people who explicitly admit they will go contact—or in the eyes of some, bother—the registrant.

Furthermore, Section 196-A(1)(B) prohibits those preferred entities and individuals who receive the Voter File from using it "for any purpose that is not directly related to activities of a political party, 'get out the vote' efforts directly related to a campaign or other activities directly related to a campaign" (hereafter, the "Use Limitation"). 21-A M.R.S. § 196-A(1)(B).

Maine's Access and Use Limitations are preempted, superseded and unenforceable under Article VI, Clause 2 of the United States Constitution (the Supremacy Clause), Article I, Section 4, Clause I of the United States Constitution (the Elections Clause), and the Supreme Court's decision in *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013). In *Inter Tribal*, the Supreme Court held in unambiguous terms that the NVRA is superior to any conflicting state laws. In such situations, "the state law, 'so far as the conflict extends, ceases to be operative.'" *Inter Tribal*, 570 U.S. at 9 (quoting *Ex parte Siebold*, 100 U. S. 371, 384 (1880)). The Court:

> When Congress legislates with respect to the "Times, Places and Manner" of holding congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States. Because the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent…. In sum, there is no compelling reason not to read Elections Clause legislation simply to mean what it says.

*Id*. at 14-15.

16

The relevant statutory text of the NVRA says that states must make available for inspection "all records" of their voter list maintenance programs.[6] 52 U.S.C. § 20507(i)(1). This Court must interpret that requirement to mean what it says—"all records." There are no safe harbors granted to records exempted or made confidential under state law, particularly when the same records are readily made available to people who expressly aim to contact those registrants. Under *Inter Tribal*, Maine law is therefore invalid and unenforceable. *See also ACORN v. Edgar*, 880 F. Supp. 1215, 1222 (N.D. Ill. 1995) ("[D]eclar[ing] that all provisions of Illinois law or regulations that conflict with the [National Voter Registration] Act are pre-empted by the [National Voter Registration] Act."); *Project Vote/Voting for Am., Inc. v. Long*, 813 F.Supp.2d 738, 743 (E.D. Va. 2011) ("[T]o the extent that any Virginia law, rule, or regulation forecloses disclosure of completed voter registration applications with the voters' SSNs redacted, the court FINDS that it is preempted by the NVRA.").

*Judicial Watch* is again instructive. The court in *Judicial Watch* also held that the NVRA's Public Disclosure Provision preempts a Maryland law that required an applicant requesting a voter registration list to be a Maryland registered voter. *Judicial Watch*, 399 F. Supp. 3d at 443- 445. After reviewing various types of preemption, the court found that limiting access to the voter registration lists to Maryland registrants "is an obstacle to the accomplishment of the NVRA's purposes"—namely, "protect[ing] the integrity of the electoral process," 52 U.S.C. § 20501(b)(3); and "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4). The court specifically noted that "Section 8(i) of the NVRA provides for the disclosure of voter registrations in order to 'assist the identification of both error and fraud in the preparation and maintenance of voter rolls.'" *Judicial Watch*, 399 F.

---

[6] Congress explicitly exempted only two specific types of records. *See* 52 U.S.C. § 20507(i)(1).

Supp. 3d at 445 (D. Md. 2019) (quoting *Project Vote / Voting for Am., Inc. v. Long*, 682 F.3d

331, 339 (4th Cir. 2012)). By limiting that disclosure to Maryland voters, Maryland law,

"exclude[ed] organizations and citizens of other states from identifying error and fraud,"

contrary to the NVRA's purposes. *Id*. The court accordingly held, "It follows that the State law is

preempted in so far as it allows only Maryland registered voters to access voter registration

lists." *Judicial Watch*, 399 F. Supp. 3d at 445.

Maine law likewise limits disclosure of its eligible voter list—the Voter File—to certain

preferred entities and individuals. *See* 21-A M.R.S. § 196-A(1)(B). It is therefore subject to (1)

ordinary conflict preemption doctrine because "compliance with both federal and state

regulations is a physical impossibility," *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98

(1992), or (2) as in *Judicial Watch*, obstacle preemption, because Maine law "stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"

*Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). Under either, doctrine, Maine law is

preempted and cannot be applied to prevent disclosure to the Foundation.

For similar reasons, Maine's Use Limitation is likewise preempted and unenforceable.

Presently, Maine law prohibits all uses of the Voter File that are "not directly related to activities

of a political party, 'get out the vote' efforts directly related to a campaign or other activities

directly related to a campaign." 21-A M.R.S. § 196-A(1)(B). Like the Access Limitation, the Use

Limitation plainly frustrates and conflicts with the NVRA's goals of "protect[ing] the integrity of

the electoral process," and "ensur[ing] that accurate and current voter registration rolls are

maintained." 52 U.S.C. § 20501(b)(3)-(4); *see also Bellitto*, 2018 U.S. Dist. LEXIS 103617, at

*12-13 (NVRA's Public Disclosure Provision "convey[s] Congress's intention that the public

should be monitoring the state of the voter rolls and the adequacy of election officials' list

maintenance programs."). The Use Limitation is therefore preempted and unenforceable.

## Conclusion

The NVRA means what it says—"**all records**" concerning voter list maintenance are

subject to public inspection. For the reasons explained herein, that broad mandate includes

Maine's Voter File. Because there are no material facts genuinely in dispute, the Foundation is

entitled to judgment as a matter of law.

Dated: March 19, 2021.

Respectfully submitted,

  /s/ Noel H. Johnson
Noel H. Johnson* (Wisconsin Bar #1068004)
Kaylan L. Phillips* (Indiana Bar #30405-84)
Public Interest Legal Foundation, Inc.
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org
*Admitted pro hac vice*

  /s/ *Steve C. Whiting*
Steve C. Whiting
The Whiting Law Firm
75 Pearl Street, Ste. 207
Portland, ME  04101
Tel: (207) 780-0681
Fax: (207) 780-0682
steve@whitinglawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2021, I electronically filed the foregoing using the

Court's ECF system, which will serve notice on all parties.


/s/ Noel H. Johnson
Noel H. Johnson
Counsel for Plaintiff
njohnson@PublicInterestLegal.org

20