UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PUBLIC INTEREST LEGAL
FOUNDATION, INC.,

                    Plaintiff,

          v.

SHENNA BELLOWS, in her official capacity
as the Secretary of State for the State of
Maine,

                    Defendant.

Docket No. 1:20-cv-00061-GZS

**DEFENDANT'S COMBINED STATEMENT OF MATERIAL FACTS**
**OPPOSING PLAINTIFF'S SUMMARY JUDGMENT MOTION**
**AND SUPPORTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Maine Local Rule 56(b) and (c) and the Court's order of February 12, 2021,

(ECF No. 30) Defendant Shenna Bellows, in her official capacity as Secretary of State (the

"Secretary"), responds to Plaintiff's Public Interest Legal Foundation, Inc.'s ("PILF's")

statement of material facts in support of its motion for summary judgment (ECF No. 35) and

offers additional statements of material facts both in opposition to PILF's summary judgment

motion and in support of the Secretary's cross-motion for summary judgment.  To the extent the

Secretary admits or admits with qualification PILF's proposed statements of fact, she does so for

summary judgment purposes only.

**The Secretary's Responses to PILF's Statement of Material Facts**

The Secretary responds to PILF's proposed statements of material fact as follows:

1.      Section 8(i)(1) of the National Voter Registration Act of 1993 ("NVRA")
        provides,

        Each State shall maintain for at least 2 years and shall make
        available for public inspection and, where available, photocopying

at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

**RESPONSE:**  Admitted.[1]

2. The Secretary is required to comply with the NVRA's Public Disclosure Provision. Deposition Transcript of Julie Flynn at 19:25-21:20 (attached as Exhibit A to Affidavit of Noel H. Johnson ("Johnson Aff."); Defendant's Response to Plaintiff's Request for Admission ("RFA") No. 1 (attached as Exhibit B to Johnson Aff.).

**RESPONSE:**  Admitted.

3. Title 21-A, Section 196-A of the Maine Revised Statutes sets forth certain requirements for access to information contained electronically in Maine's central voter registration system ("CVR") and any reports or information generated by that system. Defendant's Answer (Doc. 9) ¶ 6.

**RESPONSE:**  Admitted.

4. Title 21-A, Section 196-A(1) of Maine Revised Statutes provides that "information contained electronically in the central voter registration system and any information or reports generated by the system are confidential and may be accessed only by municipal and state election officials for the purposes of election and voter registration administration, and by others only as provided in this section."

**RESPONSE:**  Admitted.

5. Title 21-A, Section 196-A(1)(B) of Maine Revised Statutes permits certain individuals and entities to purchase a statewide "list or report" of the following "voter record information" from the CVR:

---

[1]    The Secretary is admitting to PILF's proposed "facts" quoting or paraphrasing various statutory provisions to the extent they appear to be accurate representations of those statutes.  The Secretary observes, however, that these admissions have no legal significance.  To the extent there might be some discrepancy between PILF's characterization of these statutes and the statutes themselves, the actual statutes would control.  The parties cannot bind the Court to apply incorrect law.

> [T]he voter's name, residence address, mailing address, year of birth, enrollment status, electoral districts, voter status, date of registration, date of change of the voter record if applicable, voter participation history, voter record number and any special designations indicating uniformed service voters, overseas voters or township voters.

> 21-A M.R.S. § 196-A(1)(B).

**RESPONSE:** Admitted.

6. The "list or report" described in Title 21-A, Section 196-A(1)(B) is referred to as the "Party/Campaign Use Voter File" (hereafter "Voter File"). Joint Stipulation of Material Facts (Doc. 34) ¶ 5 ("Stipulation"); Exhibit A to Johnson Aff. at 50:16-51:3; Doc. 1-5.

**RESPONSE:** Admitted.

7. Title 21-A, Section 196-A(1)(B) of Maine Revised Statutes restricts access to the Voter File to a "political party, or an individual or organization engaged in so-called 'get out the vote' efforts directly related to a campaign or other activities directly related to a campaign, or an individual who has been elected or appointed to and is currently serving in a municipal, county, state or federal office[.]"

**RESPONSE:** Qualified. The penultimate sentence of the provision allows for disclosure to members of certain organizations as well.

8. Those entities and individuals described in paragraph 7 "may purchase" the Voter File or similar voter list that includes the voter data described in Section 196-A(1)(B) "by making a request to the Secretary of State or to a registrar if the information requested concerns voters in that municipality." *Id.*

**RESPONSE:** Admitted.

9. No other individual and entity may inspect, purchase, or otherwise receive the Voter File or similar voter list that includes the voter data described in Section 196-A(1)(B). *See id.*; Stipulation ¶ 5; Doc. 1-5.

**RESPONSE:** Qualified. There are nine exceptions to the general confidentiality provision in § 196-A(1). Some of these exceptions permit disclosure of various types of similar voter lists. *See, e.g.* 21-A M.R.S. § 196-A(1)(F) (allowing for disclosure of much of the information contained in the Voter File in a semi-anonymized form); § 196-A(1)(D) (allowing

for disclosure of a file similar to the Voter List to governmental and quasi-governmental

entities).

10.     Title 21-A, Section 196-A(1)(B) prohibits those individuals and entities who
        receive the Voter File or similar voter lists that include the voter data described in
        Section 196A(1)(B) from using it "for any purpose that is not directly related to
        activities of a political party, 'get out the vote' efforts directly related to a
        campaign or other activities directly related to a campaign."

**RESPONSE:**  Qualified.  The use and sale restrictions in § 196-A(1)(B) apply to "[a]ny

person obtaining, either directly or indirectly, information from the central voter registration

system under this paragraph," and thus would not apply to parties obtaining voter data through

other exceptions in 21-A M.R.S. § 196-A(1).  Parties receiving semi-anonymized files, for

example, are subject to no restrictions on sale or use.  *See* 21-A M.R.S. § 196-A(1)(F).

11.     The Public Interest Legal Foundation, Inc., is a 501(c)(3) non-partisan, public
        interest organization incorporated and based in Indianapolis, Indiana. The
        Foundation seeks to promote the integrity of elections nationwide through
        research, education, remedial programs, and litigation. The Foundation regularly
        utilizes the NVRA's Public Disclosure Provision and state and federal open
        records laws that require government records be made available to the public.
        Using records and data compiled through these open records laws, the Foundation
        analyzes the programs and activities of state and local election officials in order to
        determine whether lawful efforts are being made to keep voter rolls current and
        accurate. The Foundation also uses records and data to produce and disseminate
        reports, articles, blog and social media posts, and newsletters in order to advance
        the public education aspect of its organizational mission. *See* Stipulation ¶ 1; Doc.
        1; Doc. 1-1.

**RESPONSE:**  Admitted.

12.     On or around October 17, 2019, the Foundation sent to Defendant Maine
        Secretary of State ("Secretary") and the Secretary received the letter filed in this
        case as Docket Entry 1-1 (hereafter, the "Request Letter"). Stipulation ¶ 1; Exhibit
        A to Johnson Aff. at 12:1113:4; Doc. 1-1.

**RESPONSE:**  Admitted.

13.     The Foundation's Request Letter requested an "electronic copy of the Maine
        statewide voter registration list" pursuant to the NVRA's Public Disclosure
        Provision. Stipulation ¶ 1; Doc. 1-1 at 2.

4

**RESPONSE**: Admitted.

14.     The Foundation's Request letter acknowledged that Title 21-A, Section 196A(1)(B) of Maine Revised Statutes appears to prohibit the Foundation from receiving the requested voter registration list and from using it for the Foundation's intended purposes. Stipulation ¶ 1; Doc. 1 at 2.

**RESPONSE:**  Admitted.

15.     The Foundation's Request Letter also notified the Secretary that Maine law violates the NVRA because it prohibits disclosure and certain uses of the requested statewide voter registration list. Stipulation ¶ 1; Doc. 1 at 2.

**RESPONSE:**  Qualified.  While the proposed statement accurately describes what the

letter says, the Secretary disputes that Maine law in fact violates the NVRA.  Defendant's

Answer (ECF No. 9).

16.     On October 17, 2019, the Foundation received an email from the Secretary denying the Foundation's request for a copy of the statewide voter registration list. Stipulation ¶ 2; Doc. 1-2.

**RESPONSE:**  Admitted.

17.     The Secretary's email explained,

> Our office is in receipt of your letter. You are correct that Maine law prohibits the disclosure of the voter registration list to your organization and for your purposes. Further response/ comment on current Maine law is beyond my scope. If you would like to contact the Maine attorney general's office to voice your concern about an existing Maine law, that would be the appropriate venue.

>  Stipulation ¶ 2; Doc. 1-2.

**RESPONSE:**  Admitted.

18.     On or around October 29, 2019, the Foundation sent to the Secretary and the Secretary received the letter filed in this case as Docket Entry 1-3 (hereafter, the "Notice Letter"). Stipulation ¶ 3; Exhibit A to Johnson Aff. at 14:16-15:5.

**RESPONSE**: Admitted.

19.     The Notice Letter notified the Secretary that the Secretary is in violation of the NVRA for failure to permit inspection and duplication of records as required by the NVRA's Public Disclosure Provision. Stipulation ¶ 3; Doc. 1-3 at 1.

**RESPONSE**: Admitted.

20.     The Notice Letter further notified the Secretary that if the violation of the NVRA was not cured within 90 days, a lawsuit may be filed against the Secretary, as permitted by the NVRA, 52 U.S.C. § 20510(b). Stipulation ¶ 3; Doc. 1-3 at 1.

**RESPONSE**: Admitted.

21.     On or around January 29, 2020, the Foundation sent to the Secretary and the Secretary received the letter filed in this case as Docket Entry 1-4. Stipulation ¶ 4; Exhibit A to Johnson Aff. at 15:15-16:1.

**RESPONSE**: Admitted.

22.     The January 29, 2020 letter notified the Secretary that the 90-day curative period afforded by the NVRA, 52 U.S.C. § 20510(b), would expire on Sunday, February 2, 2020, at the latest. Stipulation ¶ 4; Doc. 1-4 at 1.

**RESPONSE:** Admitted.

23.     On or around January 30, 2020, the Secretary sent to the Foundation and the Foundation received the letter filed in this case as Docket Entry 1-5. Stipulation ¶ 5; Exhibit A to Johnson Aff. at 16:6-22.

**RESPONSE:** Admitted.

24.     The Secretary's January 30, 2020 letter explained that the statewide voter registration list requested by the Foundation is known as the "party/campaign use voter file." Stipulation ¶ 5; Doc. 1-5 at 1.

**RESPONSE:** Admitted.

25.     The Secretary's January 30, 2020 letter further explained that the Foundation's request for the Voter File is being denied because the Foundation "is not engaged in a campaign or 'get out the vote' effort." Stipulation ¶ 5; Doc. 1-5 at 1.

**RESPONSE:** Admitted.

26.     On or around February 3, 2020, the Foundation sent to the Secretary and the Secretary received the letter filed in this case as Docket Entry 1-6. Stipulation ¶ 6; Exhibit A to Johnson Aff. at 17:15-23.

**RESPONSE:** Admitted.

27.     The Foundation's February 3, 2020 letter confirmed that the Foundation is requesting a copy of Maine's Voter File. Stipulation ¶ 6; Doc. 1-6 at 1.

**RESPONSE:** Admitted.

28.     The Foundation's February 3, 2020 letter asked the Secretary "to confirm by 2:00 pm EST on February 4, 2020 whether you will permit us to inspect and duplicate (or otherwise purchase and receive) the 'party/campaign use voter file' with the data fields described by 21-A M.R.S § 196-A(1)(B)." Stipulation ¶ 6; Doc. 1-6 at 2.

**RESPONSE:** Admitted.

29.     On or around February 5, 2020, the Secretary sent to the Foundation and the Foundation received the letter filed in this case as Docket Entry 1-7. Stipulation ¶ 7; Exhibit A to Johnson Aff. at 18:3-18.

**RESPONSE:** Admitted.

30.     The Secretary's February 5, 2020 letter confirmed that the Foundation's request for the Voter File is denied. Stipulation ¶ 7; Doc. 1-7 at 1.

**RESPONSE:** Admitted.

31.     Prior to the filing of this action, the Foundation requested from the Secretary Maine's Voter File, which is described in Title 21-A, Section 196-A(1)(B) of Maine Revised Statutes. Stipulation ¶ 8; Exhibit A to Johnson Aff. at 7:8-10; Exhibit B to Johnson Aff. at RFA No. 6.

**RESPONSE:** Admitted.

32.     The Secretary denied the Foundation's request for a copy of Maine's Voter File. Stipulation ¶ 9; Exhibit A to Johnson Aff. at 18:23-25; Exhibit B to Johnson Aff. at RFA No. 7.

**RESPONSE:** Admitted.

33.     Election officials in Maine, including the Secretary, use the CVR to carry out the voter registration functions required by federal and state law. Defendant's Response to Plaintiff's Interrogatory ("Interrogatory") No. 1 (attached as Exhibit C to Johnson Aff.); *see* Exhibit A to Johnson Aff. at 23:5- 26:2; 29:23-30:4; 30:18-31:11.

**RESPONSE:** Admitted.

34.     The CVR was implemented to comply with the Help America Vote Act of 2002 ("HAVA") and was designed to standardize and centralize the registration of voters statewide, Exhibit C to Johnson Aff. at Interrogatory No. 1; *see also* Exhibit D to Johnson Aff. at 1, and allowed Maine to have "one statewide database of records," Exhibit A to Johnson Aff. at 32:6.

**RESPONSE:** Admitted.

35.   The CVR is comprised of two components, a database and a software application. Exhibit A to Johnson Aff. at 39:5-12; 29:20-22. The database component is made up of tables that contain voter record information for each registered voter. Exhibit A to Johnson Aff. at 7:2324; 35:23-38:12; 38:17-39:4; Exhibit C to Johnson Aff. at Interrogatory No. 2 ("The CVR database contains voter registration record information as required by state law, 21-A M.R.S. § 152…."). The application component allows the user to view and maintain the voter record information contained in the database. Exhibit A to Johnson Aff. at 39:5-12. When a voter registration applicant's information is entered into the CVR software application, it is saved in the database tables. Exhibit A to Johnson Aff. at 29:20-22; 40:18-41:6. The following voter record information is maintained in the CVR for each registered voter:

a.   Name. Exhibit A to Johnson Aff. at 36:3-5.

b.   Residential address. Exhibit A to Johnson Aff. at 36:6-7.

c.   Mailing address. Exhibit A to Johnson Aff. at 36:8-9.

d.   Complete date of birth. Exhibit A to Johnson Aff. at 36:10-12.

e.   Enrollment status. Exhibit A to Johnson Aff. at 36:13-14.

f.   Electoral district. Exhibit A to Johnson Aff. at 36:20-22.

g.   Voter status. Exhibit A to Johnson Aff. at 36:23-24.

h.   Date of registration. Exhibit A to Johnson Aff. at 37:6-8.

i.   Date of updates or changes to voter record information. Exhibit A to Johnson Aff. at 37:9-15.

j.   Voter participation history. Exhibit A to Johnson Aff. at 37:16-18.

k.   Voter record number. Exhibit A to Johnson Aff. at 37:19-21.

l.   Indication that the registrant is a uniformed service member or overseas voter, if applicable. Exhibit A to Johnson Aff. at 38:9-12.

*See also* Exhibit A to Johnson Aff. at 40:18-25.

**RESPONSE:**  Qualified.  The cited records establish that the listed data fields are included in CVR but they do not establish that they are an exhaustive list of all data fields in CVR.  Johnson Aff., Ex. A at 36:3–38:12.

36.    Maine has programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. Exhibit A to Johnson Aff. at 21:21-22:2.

**RESPONSE:**  Admitted.

37.    The CVR is used to carry out Maine's programs and activities conducted to keep the list of eligible voters current and accurate, Exhibit A to Johnson Aff. at 50:6-9, including, creating new voter registration records, Exhibit A to Johnson Aff. at 39:13-15, making changes and updates to voter record information, Exhibit A to Johnson Aff. at 42:8-16; 43:22-44:8, cancelling a voter registration record, Exhibit A to Johnson Aff. at 44:9-11, and maintaining voter participation history, Exhibit A to Johnson Aff. at 49:13-50:5; *see also* Exhibit C to Johnson Aff. at Interrogatory No. 4.

**RESPONSE:**  Qualified.  The cited record reflects that CVR is used to carry out Maine's programs and activities conducted to keep the list of eligible voters current and accurate, and further reflects that CVR is used to conduct the specific activities listed in the proposed fact. However, the witness did not testify that the specific activities listed in the proposed fact were examples of "programs and activities conducted to keep the list of eligible voters current and accurate." *See* Johnson Aff., Ex. A at 39:13–15; 42:8–16, 43:22–44:8, 44:9–11; 49, 13:50:5.

38.    The CVR is used to generate the Voter File. Exhibit A to Johnson Aff. at 50:1015; 52:8-11; *see also* Exhibit C to Johnson Aff. at Interrogatory No. 3; *see also* Exhibit D to Johnson Aff. at 2.

**RESPONSE:**  Admitted.

39.    The voter record information contained in the Voter File, *see supra* ¶¶ 5, 35, is derived and pulled from the voter record information stored in the CVR database tables for each eligible registrant. Exhibit A to Johnson Aff. at 52:18-54:13; Exhibit C to Johnson Aff. at Interrogatories No. 8 and No. 9.

**RESPONSE:**  Admitted.

40.     The Voter File "captures data on voters who are eligible to vote in Maine as of the date the report is generated." Exhibit B to Johnson Aff. at RFA No. 3.

**RESPONSE:**  Admitted.

41.     When voter record information is added, updated, changed, or deleted in the CVR database, those changes are reflected in the Voter File the next time it is generated. Exhibit A to Johnson Aff. at 55:25-56:8.

**RESPONSE:**  Admitted.

42.     The voter record information contained in the Voter File is current as of the date the Voter File is generated. Exhibit A to Johnson Aff. at 7:11-14.

**RESPONSE:**  Admitted.

### DEFENDANT'S STATEMENT OF ADDITIONAL MATERIALS FACTS

Pursuant to L.R. 56(b) and (c) the Secretary offers the following statement of additional material facts, both in support of her motion for summary judgment and in opposition to Plaintiff's motion for summary judgment:

*The Creation of Maine's CVR System*

43.     At the time the NVRA passed in 1993, Maine, like many states, had no centralized voter registration database.  Declaration of Julie Flynn, dated April 9, 2021 (ECF No. 36) ("Flynn Decl.") ¶ 6.

44.     Because Maine elections are administered primarily at the municipal level, each of Maine's more than 500 municipalities was responsible for maintaining voter rolls for its residents, and did so in a variety of forms, including by handwritten lists and a variety of electronic formats.  Flynn Decl. ¶ 6.

45.     The enactment of HAVA in 2002 required Maine to upgrade this system of maintaining voter rolls and implement "a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained and administered at the State

level that contains the name and registration information of every legally registered voter in the State." Flynn Decl. ¶ 7.

46.     The Secretary's office, working with outside vendors, created the statewide electronic system required by HAVA, which is known as the Central Voter Registration system, or CVR, which became fully operational in the spring of 2007. Flynn Decl. ¶ 8.

47.     The database portion of CVR contains personal information about every registered voter in the state, including nearly all the information that a voter provides in his or her registration form, such as name, address, party affiliation, and date of birth, as well as certain other information inputted by municipal registrars, such as which elections the voter voted in. Flynn Decl. ¶ 9.

48.     The CVR database is maintained in the Secretary's secure data center. Flynn Decl. ¶ 9.

49.     At the time CVR was implemented in 2007, Maine had just under one million registered voters. By January 1, 2021, CVR contained personal data on 1,134,245 active status voters and 3,595 inactive status voters. Flynn Decl. ¶ 10.

*Maine's Voter Privacy Law*

50.     Prior to the implementation of CVR, the fact that voter data was held at the municipal level in a variety of different formats made it nearly impossible for anyone to compile a complete and up-to-date list of all Maine voters. Flynn Decl. ¶ 11.

51.     The Legislature had concerns about the privacy implications of compiling such a large electronic database containing personal information about Maine voters, and enacted the first privacy protections on CVR data in 2005, before CVR became operational. *See* 2005 P.L.

ch. 404 (codified at 21-A M.R.S. § 196, recodified as amended at 21-A M.R.S. § 196-A).  Flynn Decl. ¶¶ 11–12.

52.     The Legislature identified three "compelling state interests" at stake in regulating public access to CVR data: preventing voter fraud, preventing the potential disenfranchisement of voters, and ensuring that voters are not discouraged from participating in the voting process. Flynn Decl. ¶ 13.

53.     The Legislature's concern about voter fraud was that, if CVR data was readily accessible, it might be used by unscrupulous individuals to commit voter fraud.  Flynn Decl. ¶ 13.

54.     The Legislature was also concerned that eligible voters might be deterred from registering to vote if they knew the personal data they were providing on the registration form (or other data tracked by CVR, such as voter participation history) would become public or be sold to commercial interests.  Flynn Decl. ¶ 13.

55.     Based on part on annual reports on CVR issued by the Secretary, the Maine Legislature has amended the laws governing the confidentiality of CVR data several times since 2005.  Flynn Decl. ¶ 15.

56.     The party/campaign-use voter file, generated from CVR pursuant to 21-A M.R.S. § 196-A(1)(B), contains extensive data on individual voters, specifically:

- the voter's name
- residence address
- mailing address
- year of birth
- enrollment status
- electoral districts
- voter status
- date of registration
- date of change of the voter record if applicable
- voter participation history
- voter record number
- any special designations indicating uniformed service voters, overseas voters or township voters

Flynn Decl. ¶ 17.

57.     "Enrollment status" refers to the voter's party enrollment, if any.  "Voter status" refers to whether the voter has failed to respond to a change of address confirmation notice, and is thus at risk of having their registration cancelled if they fail to vote in the next two general elections.  *See* 21-A M.R.S. § 162-A.  "Voter participation history" is a record of all state and federal primary and general elections in which the voter has participated going back to the date of registration or 2007, whichever is later.  Flynn Decl. ¶ 18.

58.     21-A M.R.S. § 196-A(1)(B) allows political parties and officials to access this detailed voter information, subject to the restrictions on use, sale, and further dissemination, in recognition of the fact that giving candidates, parties, and other participants in the electoral process the ability to find and communicate with registered voters can increase civic engagement and participation in the electoral process as well as to ensure that political parties are able to associate with their enrolled voters.  Flynn Decl. ¶ 19.

59.     Individuals or entities requesting a party/campaign-use voter file under Exception B are required to submit an application to the Secretary documenting that they qualify to receive the data and acknowledging the restrictions on its use.  Flynn Decl. ¶ 20.

60.     The Secretary can reject requests for data by unauthorized parties or for what appear to be unauthorized purposes, and has in fact done so on a number of occasions.  Flynn Decl. ¶ 20.

*The Secretary's List Maintenance Efforts*

61.     Since implementation of CVR in 2007, the Secretary has engaged in a program of maintaining the voter registrations documented in CVR, as required by the NVRA and HAVA. Flynn Decl. ¶ 21.

62.     The Secretary's office routinely works with municipalities to identify and remove records of deceased voters, voters who have moved, and duplicate voter records.   Flynn Decl. ¶ 21.

63.     Municipalities review State death records on a monthly basis and cancel the records of voters who have died.  Flynn Decl. ¶ 21.

64.     The Secretary's office, in 2007, 2009, 2011, and 2013, conducted system-wide voter list maintenance processes using U.S. Postal Service National Change of Address data. Flynn Decl. ¶ 22.

65.     In 2017, The Secretary's office conducted additional maintenance activities using the Interstate Voter Registration Crosscheck Program, which enabled cancellation of registrations for voters who had registered and voted in other states after having previously registered in Maine.  Flynn Decl. ¶ 23.

66.     The Secretary's office had planned to conduct additional list maintenance operations in 2020, including the mailing of notices under § 8(d)(2) of the NVRA, but was unable to do so due to the COVID-19 pandemic, and as a result has rescheduled those efforts for 2021.  Flynn Decl. ¶ 24.

67.     The Secretary's office generated various records documenting the list maintenance efforts of 2007, 2009, 2011, 2013, and 2017.  Flynn Decl. ¶ 25.

68.     While some of these records no longer exist because of the expiration of the two-year retention period in 52 U.S.C. § 20507(i)(1), all or virtually all of these records would have been available for public inspection and copying at the time, including records documenting which voter registrations were cancelled as a result of the Secretary's efforts.  Flynn Decl. ¶ 25.

69.     All or virtually all records documenting the list maintenance efforts planned for 2021 will be available to the public for inspection and copying.  Flynn Decl. ¶ 25.

*The Party/Campaign-Use Voter File*

70.     The party/campaign-use voter file that the Secretary produces under 21-A M.R.S. § 196-A(1)(B) is not used by the Secretary to conduct list maintenance activities or for any other purpose.  Flynn Decl. ¶ 26.

71.     The party/campaign-use voter file contains no information on voters whose registrations were cancelled.  Flynn Decl. ¶ 27.

72.     The party/campaign-use voter file contains no data that would indicate whether a particular voter's registration information was altered as the result of the Secretary's or any municipalities' periodic list maintenance efforts.  Flynn Decl. ¶ 28.

73.     The Secretary's periodic list maintenance activities typically affect only a modest percentage of the individual voter files stored within CVR.  Flynn Decl. ¶ 29.

74.     In January 30, 2020 correspondence, Deputy Secretary Flynn offered to provide PILF with paper records documenting the Secretary's 2017 list maintenance effort using the CrossCheck system.  Flynn Decl. ¶ 30.

75.     Had PILF accepted Deputy Secretary Flynn's offer, she would have promptly provided the requested records.  Flynn Decl. ¶ 30.

*PILF*

76.     PILF exists "to assist states and others to aid the cause of election integrity and fight against lawlessness in American elections."  Rule 30(b)(6) Deposition of N. Christian Adams, dated Feb. 8, 2021 (ECF No. 37) ("Adams Dep.") at 57:24–58:13.

77.     PILF develops findings and publishes reports on alleged irregularities in various

jurisdictions relating to voter registration.  Adams Dep. at 120:14–121:2 & Ex. 11 (ECF No. 37-

1) at 36.

78.     In May 2017, PILF issued a report called *Alien Invasion II, the Sequel to the*

*Discovery and Coverup of Noncitizen Registration and Voting in Virginia.*  Adams Dep. at

141:3–14 & Ex. 12 (ECF No. 37-2).

79.     The originally published version of the report attached records that PILF obtained

from governmental officials that included the names and contact information of individual

Virginia registrants and voters.  Adams Dep. at 141:3–14, 144:8–16, & Ex. 12 at Title Page.

80.     One of the report's attachments was a record that listed voters whose registrations

had been cancelled based on a declaration of non-citizenship on a Department of Motor Vehicles

form and who failed to affirm citizenship within two weeks of being sent a notice from election

officials.  Adams Dep. at 141:3–14, 146:6–147:15, & Ex. 12 at Title Page.

81.     Some of the individuals named in these records were "false positives," meaning

that they were in fact U.S. citizens.  Adams Dep. at 149:19–150:9 & Ex. 12 at Title Page.

82.     In April 2018, individuals identified in the report brought a federal lawsuit against

PILF for defamation and violation of the Voting Rights Act and 42 U.S.C. § 1985(3), alleging

that they were in fact properly voting citizens and that PILF had falsely accused them of

committing felonies.  *League of United Latin Am. Citizens - Richmond Region Council 4614 v.*

*Pub. Int. Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at *1–*2 (E.D. Va. Aug. 13,

2018).

83.     The current version of the *Alien Invasion II* report contains a statement on the title

page explaining that the exhibits identifying specific voters had been removed and stating in part:

"PILF recognizes that individuals in Exhibits 1 and 12 were in fact citizens and that these citizens did not commit felonies.  PILF profoundly regrets any characterization of those registrants as felons or instances of registration or voting as felonies."  Adams Dep. at 141:3–14 & Ex. 12 at Title Page; *see also* https://publicinterestlegal.org/files/Alien-Invasion-II-FINAL.pdf (last accessed on Apr. 9, 2021).

84.      In November 2019, PILF published a report titled *Calm Before the Storm, Are Palm Beach County's Elections Protected Against Emerging Threats?*, in which it published the full names, addresses, birthdates, and party enrollment of Florida voters that PILF alleged were registered to vote twice.  Adams Dep. at 120:14–124:14 & Ex. 11 at 16–18; *see also* https://publicinterestlegal.org/files/Report-Calm_Before_the_Storm-Palm_Beach_County1.pdf

*Correspondence Between PILF and the Secretary's Office*

85.      In October 2019, PILF wrote a letter to Maine's previous Secretary of State, notifying him of PILF's view that 21-A M.R.S. § 196-A, by making CVR data confidential, violated § 8(i) of the NVRA and requesting that the Secretary "provide us with an electronic copy of the statewide voter registration list."  Joint Stipulation of Material Facts ("Joint Stip.") (ECF No. 34) ¶ 1.

86.      Deputy Secretary Flynn's letter to PILF dated January 30, 2020, described Maine's CVR system, and noted that state law prohibited disclosure of lists of CVR data except as permitted in Exceptions D and F of § 196-A(1).  Joint Stip. ¶ 5.

87.      Deputy Secretary Flynn's letter also enclosed a report submitted to the Legislature on administration of the CVR that summarized the Secretary's list maintenance activities and offered to produce paper records documenting the Secretary's 2017 list maintenance effort using the CrossCheck system.  Joint Stip. ¶ 5.

88.    Deputy Secretary Flynn's letter further offered to produce a list of the voters who received the § 8(d)(2) notices that the Secretary had planned to send out later in 2020.  Joint Stip. ¶ 5.

89.    In response, PILF requested that the Secretary produce the party/campaign-use voter file described in Exception B of § 196-A(1).  Joint Stip. ¶ 6.

90.    Deputy Secretary Flynn responded:

> Although our office does not have authority under state law to provide you with an electronic copy of that particular list or report from the CVR, as explained in my letter of January 30, 2020, we have offered—and continue to offer—an opportunity for you to inspect relevant records pursuant to section 8(i) of the NVRA, 52 U.S.C. § 20507(i).  We are also willing to provide you with copies of records reflecting the list maintenance activities planned for the time period after the March or June 2020 primary elections, in accordance with section 8(d)(2) and 8(i) of the NVRA, as described in my letter of January 30, 2020.
>
> In short, we are willing to work with you to resolve this issue. Please advise whether you are prepared to do so.  Thank you.

Joint Stip. ¶ 7.

Dated: April 9, 2021

/s/ Jonathan R. Bolton
JONATHAN R. BOLTON
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800
jonathan.bolton@maine.gov