United States District Court
District of Maine

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.** *Plaintiff*, v. **SHENNA BELLOWS,** in her official capacity as the Secretary of State for the State of Maine *Defendant*. | Case No. 1:20-cv-00061-GZS |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Public Interest Legal Foundation, Inc. (the "Foundation"), by its attorneys, brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), because the action seeks injunctive and declaratory relief under the NVRA. This Court may also grant declaratory relief under 28 U.S.C. § 2201.

2. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

3. The Public Interest Legal Foundation, Inc., (the "Foundation") is a non-partisan, 501(c)(3) public interest organization incorporated and based in Indianapolis, Indiana. The

Foundation seeks to promote the integrity of elections nationwide through research, education, remedial programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure Provision and state and federal open records laws that require government records be made available to the public. Using records and data compiled through these open records laws, the Foundation analyzes the programs and activities of state and local election officials in order to determine whether lawful efforts are being made to keep voter rolls current and accurate in accordance with federal and state law. The Foundation also uses records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its organizational mission.

4. Defendant Shenna Bellows ("Secretary Bellows") is the Secretary of State for the State of Maine. Secretary Bellows is Maine's chief election official and "the coordinator of state responsibilities under the National Voter Registration Act of 1993." 21-A M.R.S. § 180.

5. Secretary Bellows is sued in her official capacity only.

## BACKGROUND

*Maine Law*

6. Title 21-A, Section 196-A of the Maine Revised Statutes governs access to data from Maine's centralized electronic voter registration system (the "CVR").

7. Section 196-A(1) provides that "information contained electronically in the central voter registration system and any information or reports generated by the system are confidential and may be accessed only by municipal and state election officials for the purposes of election and voter registration administration, and by others only as provided in this section."

8. Section 196-A(1)(B) permits certain preferred individuals and entities to purchase a statewide "list or report" of the following "voter record information":

> [T]he voter's name, residence address, mailing address, year of birth, enrollment status, electoral districts, voter status, date of registration, date of change of the voter record if applicable, voter participation history, voter record number and any special designations indicating uniformed service voters, overseas voters or township voters.

21-A M.R.S. § 196-A(1)(B).

9. The "list or report" described in paragraph 8 is referred to as the "Party/Campaign Use Voter File." *See* Exhibit E at 1.

10. Section 196-A(1)(B) restricts access to the "Party/Campaign Use Voter File" to a "political party, or an individual or organization engaged in so-called "get out the vote" efforts directly related to a campaign or other activities directly related to a campaign, or an individual who has been elected or appointed to and is currently serving in a municipal, county, state or federal office[.]"

11. Those entities and individuals described in paragraph 10 "may purchase" the "Party/Campaign Use Voter File" "by making a request to the Secretary of State or to a registrar if the information requested concerns voters in that municipality." *Id*.

12. Section 196-A(1)(B)(1)-(2) state that the persons and entities described in paragraph 10 may not:

> (1) Sell, transfer to another person or use the voter information or any part of the voter information for any purpose that is not directly related to activities of a political party, 'get out the vote' efforts directly related to a campaign or other activities directly related to a campaign; or
>
> (2) Cause the voter information or any part of the voter information that identifies, or that could be used with other information to identify, a specific voter, including but not limited to a voter's name, residence address or street address, to be made accessible by the general public on the Internet or through other means.

13. However, a person or entity authorized to receive the "Party/Campaign Use Voter File" may "provid[e] access to such information to its members, volunteers or employees for

3

purposes directly related to party activities, 'get out the vote' efforts or a campaign." 21-A M.R.S. § 196-A(1)(B).

14. Prior to October 2021, other than those persons and entities described in paragraph 10, no other individual or entity could inspect, purchase, or otherwise receive the "Party/Campaign Use Voter File."

15. On June 21, 2021, Maine's Governor signed into law an act that amends 21-A M.R.S. § 196-A. *See* P.L. 2021, ch. 310.

16. As amended, Section 196-A(1)(J) permits the following to purchase the "Party/Campaign Use Voter File" by making a request to the Secretary of State and paying the necessary fee: "An individual or organization that is evaluating the State's compliance with its voter list maintenance obligations[.]" 21-A M.R.S. § 196-A(1)(J).

17. However, the "individual or organization" may not:

(1) Sell, transfer to another person or use the voter information or any part of the information for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations; or

(2) Cause the voter information or any part of the voter information that identifies, or that could be used with other information to identify, a specific voter, including but not limited to a voter's name, residence address or street address, to be made accessible by the general public on the Internet or through other means.

21-A M.R.S. § 196-A(1)(J)(1)-(2) (the "Use Restrictions").

18. An individual or organization that violates Maine's "Use Restrictions" "commits a civil violation" and may be fined up to $1,000 for the first offense and up to $5,000 for each subsequence offense. 21-A M.R.S. § 196-A(5)(A)-(B) (the "Fines").

19. With respect to 21-A M.R.S. § 196-A(5)(B), the publication of each voter's information is considered a separate offense for which the Fines may be imposed.

*The NVRA's Public Disclosure Provision*

20. The NVRA provides, in relevant part, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

21. The Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012).

22. The Public Disclosure Provision is designed to "ensure that election officials are fulfilling their list maintenance duties" and is "available to any member of the public." *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12 (S.D. Fla. Mar. 30, 2018). The Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. Accordingly, election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls." *Id*. at *12-13.

*Defendant is Denying the Foundation Access to the "Party/Campaign Use Voter File"*

23. On October 17, 2019, the Foundation emailed a letter to then-Secretary of State Matthew Dunlap (the "Secretary"). The letter requested an electronic copy of Maine's statewide voter registration list pursuant to the NVRA's Public Disclosure Provision. Exhibit A.

24. The letter acknowledged that the former 21-A M.R.S. § 196-A(1)(B) appeared to prohibit the Foundation from receiving the requested voter registration list and from using it for the Foundation's intended purposes. Exhibit A.

25. The letter further explained that the NVRA, as a federal enactment, supersedes and preempts Maine law and therefore a denial of the Foundation's request would violate the NVRA. Exhibit A.

26. On October 17, 2019, the Foundation received an email from Kristen Muszynski, Director of Communications for the Department of the Secretary of State denying the Foundation's request. Exhibit B. The email explained:

> Our office is in receipt of your letter. You are correct that Maine law prohibits the disclosure of the voter registration list to your organization and for your purposes. Further response/ comment on current Maine law is beyond my scope. If you would like to contact the Maine attorney general's office to voice your concern about an existing Maine law, that would be the appropriate venue.

*Id*.

27. On October 29, 2019, the Foundation sent a letter to then-Secretary Dunlap via email and certified mail through United States Postal Service (the "Notice Letter," Exhibit C). The Maine Attorney General was copied on the correspondence.

28. The Notice Letter notified the Secretary that he is in violation of the NVRA for failure to permit inspection of voter list maintenance records as required by 52 U.S.C. § 20507(i). Exhibit C at 1.

29. The Notice Letter further notified the Secretary that if the violation of the NVRA was not cured within 90 days, a lawsuit may be filed against him, as permitted by the NVRA, 52 U.S.C. § 20510(b). Exhibit C at 1.

30. The Foundation received no response from the Secretary or any other person at Maine Secretary of State's office following service of the Notice Letter.

31.     On January 29, 2020, the Foundation sent another letter to the Secretary (the "Final Letter," Exhibit D). The Final Letter notified the Secretary that the 90-day curative period afforded by the NVRA, 52 U.S.C. § 20510(b), would expire on Sunday, February 2, 2020, at the latest. Exhibit D at 1.

32.     The Final Letter also notified the Secretary that if he continues to deny access to the requested records beyond February 2, 2020, the Foundation will pursue legal remedies through litigation. Exhibit D at 1.

33.     On January 31, 2020, the Foundation received a letter from Julie L. Flynn, Deputy Secretary of State for the State of Maine. Exhibit E. The letter explained that the voter registration list described in 21-A M.R.S. § 196-A(1)(B) is known as the "party/campaign use voter file." Exhibit E at 1.

34.     Deputy Secretary Flynn's letter confirmed that the Foundation's request for the "Party/Campaign Use Voter File" is being denied because the Foundation "is not engaged in a campaign or 'get out the vote' effort." Exhibit E at 1.

35.     The letter also explained that "state law does not allow us to provide you with an electronic copy of the CVR database, or any report in electronic form generated by the CVR other than as described in section 196-A(l)(D) or (F)." Exhibit E at 2.

36.     The letter asked the Foundation to "describe, with greater specificity, what records (or data fields) you would like to inspect that you believe are within the scope of NVRA section 8(i)." Exhibit E at 2.

37.     On February 3, 2020, the Foundation sent a response via email to Deputy Secretary Flynn's letter, copying the Secretary and his counsel on the correspondence. Exhibit F. The Foundation's letter reiterated that the Foundation is "seeking the list and fields of data

described in 21-A M.R.S § 196-A(1)(B), *i.e.*, what your most recent letter refers to as the 'party/campaign use voter file.'" Exhibit F at 1.

38. The Foundation asked the Secretary "to confirm by 2:00 pm EST on February 4, 2020 whether you will permit us to inspect and duplicate (or otherwise purchase and receive) the 'party/campaign use voter file' with the data fields described by 21-A M.R.S § 196-A(1)(B)." *Id*. at 2.

39. On February 5, 2020, Deputy Secretary Flynn sent a response via email to the Foundation. Exhibit G. The letter confirmed that the Foundation's request for the "Party/Campaign Use Voter File" is denied. *Id*.

40. The Secretary has not provided the "Party/Campaign Use Voter File" to the Foundation.

41. Defendant's refusal to provide the requested voter registration list to the Foundation violates the NVRA.

***Maine Law Prohibits the Foundation from Using the "Party/Campaign Use Voter File" As Congress Intended***

42. The Public Disclosure Provision places no restrictions on the recipient's use of records within its scope.

43. Maine law places restrictions on the recipient's use of the "Party/Campaign Use Voter File."

44. For example, Maine law prohibits use of the "Party/Campaign Use Voter File" "for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations." 21-A M.R.S. § 196-A(1)(J)(1).

45. The Foundation intends to use the "Party/Campaign Use Voter File" for uses legally prohibited by Maine law.

46. The Foundation intends to use the "Party/Campaign Use Voter File" to evaluate how and whether **other states or local governments** are complying with list maintenance obligations and other best practices.

47. The Foundation also intends to use the "Party/Campaign Use Voter File" to **enforce** state and federal voter list maintenance law in Maine and/or in other states and local governments.

48. The Foundation intends to use the "Party/Campaign Use Voter File" for other purposes that are "not directly related to evaluating [Maine's] compliance with its voter list maintenance obligations," such as educating the public and analyzing the "voter participation history" data included in the "Party/Campaign Use Voter File."

49. The Foundation also intends to "transfer" voter information contained in the "Party/Campaign Use Voter File" to other persons or entities for purpose intended by Congress but "not directly related to evaluating [Maine's] compliance with its voter list maintenance obligations," such as providing voter list maintenance leads and potentially irregular voting data to other states and local governments. Maine law prohibits those activities.

50. Maine law also prohibits causing voter information contained in the "Party/Campaign Use Voter File" "to be made accessible by the general public on the Internet or through other means." 21-A M.R.S. § 196-A(1)(J)(2).

51. Any voter information and/or voter participation data provided by the Foundation to other states and local governments may be subject to those states' open records laws. As such, that information and data is "made accessible by the general public … through other means," 21-A M.R.S. § 196-A(1)(J)(2), and thus Maine law prohibits the Foundation's intended use.

52. Maine law, namely, 21-A M.R.S. § 196-A, denies the Foundation the ability to use the "Party/Campaign Use Voter File" for the Foundation's intended purposes.

***Maine Law Denies Access to Anyone Who Will Not Agree in Advance to Abide by Maine's Impermissible Use Restrictions***

53. Maine law provides, "The Secretary of State may design a form to be used for all requests for information or lists from the central voter registration system." 21-A M.R.S. § 196-A(3).

54. Maine's current request form is available at https://www.maine.gov/sos/cec/elec/data/cvrdatarequest.doc (last accessed Nov. 29, 2021).

55. The request form, as presently drafted, requires the requester to sign the form and attest to the following:

> I, the undersigned requestor of Information from Maine's Central Voter Registration (CVR) system, understand that the information I receive from the CVR is subject to the restrictions on use and redistribution of data, as provided in 21-A MRSA, section 196-A.

*Id*.

56. Maine's current data request instructions are available at https://www.maine.gov/sos/cec/elec/data/cvrdatareqinfoinst.doc (last accessed Nov. 29, 2021).

57. The data request instructions, as presently drafted, provide,

> NOTE: By signing the Request Form, the requestor acknowledges the restrictions on use and redistribution of data, as provided in 21-A MRSA §196-A.

*Id*.

58. On information and belief, the Secretary has or will soon revise Maine's data request form and instructions to reflect the amendments to 21-A M.R.S. § 196-A.

59. On information and belief, the revised date request form and instructions, will require the requester to affix his or her signature and make substantially similar, if not identical, attestations and/or acknowledgments to those presently in place.

60. On information and belief, the Secretary will not provide the "Party/Campaign Use Voter File" to anyone who does not sign the data request form or otherwise agree to abide by the use restrictions, as provided in 21-A M.R.S. § 196-A.

61. The Foundation is being and will be denied the "Party/Campaign Use Voter File" unless it agrees in advance to abide by the use restrictions, as provided in 21-A M.R.S. § 196-A.

62. The Foundation intends to request the "Party/Campaign Use Voter File" from the Defendant in the future and therefore will be subject to these same requirements again, absent relief.

***Notice and Opportunity to Cure***

63. The Foundation provided Defendant—the chief election official of Maine—with written notice of the NVRA violations alleged herein, thereby satisfying the NVRA's pre-litigation notice requirement, 52 U.S.C. § 20510(b)(1). *See* Exhibit C.

64. Defendant did not cure the violations of the NVRA within the 90 days permitted by the NVRA. *See* 52 U.S.C. § 20510(b)(2).

65. Defendant has, to date, still not cured her NVRA violations.

66. The Foundation will continue to be injured by the Defendant's violations of the NVRA unless and until the Defendant is enjoined from continuing to violate the law.

67. The Foundation is a person aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

## COUNT I
### Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)
### Denial of Access

68. The Foundation realleges the preceding paragraphs as if fully stated herein.

69. The requested record(s) are in the possession, custody, and control of the Defendant.

70. The voter registration list described in 21-A M.R.S § 196-A(1)(B)—otherwise known as the "Party/Campaign Use Voter File"—is a record covered by the Public Disclosure Provision of the NVRA, 52 U.S.C. § 20507(i). *See Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 438-442, 446 (D. Md. 2019); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014) ("The Court likewise concludes that the Voter Roll is a 'record' and is the 'official list[] of eligible voters' under the NVRA Public Disclosure Provision."); *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *13 (S.D. Fla. Mar. 30, 2018) ("[E]lection officials must provide full public access to all records related to their list maintenance activities, including their voter rolls."); *see also Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 U.S. Dist. LEXIS 102543, at *15 (N.D. Ill. June 1, 2021) (holding, at the pleading state, that statewide voter roll "falls within Section 8(i)'s disclosure provision").

71. The Public Disclosure Provision authorizes and entitles the Foundation to inspect and copy, or otherwise purchase and receive the "Party/Campaign Use Voter File."

72. By conditioning the Foundation's federal right to inspect voter list maintenance records on the Foundation's agreement to abide by impermissible state-law use restrictions, Maine functionally denies the Foundation access to the "Party/Campaign Use Voter File." Maine's policy in this regard violates and conflicts with the NVRA, a federal law.

73. Defendant's violations of the NVRA are causing the Foundation to suffer a concrete informational injury because the Foundation does not have records and information to which it is entitled under federal law. *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.").

74. By denying the Foundation the ability to obtain the requested voter list maintenance records, Defendant is also impairing the Foundation's ability to, *inter alia*, assess compliance by Maine and other state and local government with voter list maintenance obligations and aid other states and local governments in carrying out their voter list maintenance programs.

75. Defendant's violations of the NVRA are thus frustrating, impeding, and harming the efforts of the Foundation to carry out its organizational mission.

76. Any Maine statute, regulation, practice, or policy that conflicts with, overrides, or burdens the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States.

77. The Secretary's policy of conditioning access to the "Party/Campaign Use Voter File" is therefore preempted, invalid, and unenforceable.

## COUNT II
### Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)
### Impermissible Use Restrictions

78. The Foundation realleges the preceding paragraphs as if fully stated herein.

79. The NVRA's Public Disclosure Provision places no restrictions on the recipient's use of voter list maintenance records.

80. Maine law places restrictions on the recipient's use of voter list maintenance records.

81. As described herein, the Foundation intends to use the "Party/Campaign Use Voter File" for purposes legally prohibited by Maine law.

82. By denying the Foundation the ability to use "Party/Campaign Use Voter File" as desired, Defendant is impairing the Foundation's ability to, *inter alia*, assess compliance by Maine and other state and local government with voter list maintenance obligations and aid other states and local governments in carrying out their voter list maintenance programs.

83. Maine law and Defendant's NVRA violations are thus frustrating, impeding, and harming the efforts of the Foundation to carry out its organizational mission.

84. By denying the Foundation the ability to use the "Party/Campaign Use Voter File" for purposes not prohibited by federal law and for purposes for which the NVRA was enacted, 21-A M.R.S. § 196-A conflicts with the NVRA, a federal law.

85. Any Maine statute, regulation, practice, or policy that conflicts with, overrides, or burdens the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States.

86. The use restrictions found in 21-A M.R.S. § 196-A(1)(J) are therefore preempted, invalid, and unenforceable.

### COUNT III
### Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)
### Impermissible Fines

87. The Foundation realleges the preceding paragraphs as if fully stated herein.

88. The NVRA's Public Disclosure Provision imposes no fines on the recipient for impermissible uses because the NVRA places no restrictions on use of voter list maintenance records.

89. Maine law places restrictions on the use of voter list maintenance records and imposes severe fines for each violation of those use restrictions. 21-A M.R.S. § 196-A(5).

90. Because the Foundation intends to use the "Party/Campaign Use Voter File" for purposes legally prohibited by Maine law, the Foundation is subject to those severe fines.

91. By imposing or threatening to impose severe fines on the Foundation, Defendant is frustrating, impeding, and harming the efforts of the Foundation to carry out its organizational mission.

92. By imposing or threatening to impose severe fines on the Foundation for its use of voter list maintenance records, 21-A M.R.S. § 196-A conflicts with the NVRA, a federal law.

93. Any Maine statute, regulation, practice, or policy that conflicts with, overrides, or burdens the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States.

94. The fines found in 21-A M.R.S. § 196-A(5) are therefore preempted, invalid, and unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

1. Declaring that Defendant is in violation of Section 8(i) of the NVRA for refusing to allow the Foundation to inspect and copy the requested voter registration list, otherwise known as the "Party/Campaign Use Voter File."

2. Declaring that Section 8(i) of the NVRA preempts and supersedes any requirement or restriction in 21-A M.R.S. § 196-A, and any other Maine statute, regulation, practice, or policy that prevents the Foundation from inspecting and copying the requested voter registration list or that prohibits or restricts the Foundation from using the "Party/Campaign Use Voter File" intended and in a way not prohibited by federal law.

3. Declaring that Section 8(i) of the NVRA preempts and supersedes the fines imposed by 21-A M.R.S. § 196-A(5).

4. Ordering Defendant to produce to the Foundation the statewide voter registration list described in 21-A M.R.S § 196-A(1)(B)—otherwise known as the "Party/Campaign Use Voter File"—or otherwise ordering Defendant to allow the Foundation to inspect and copy the same information.

5. Permanently enjoining Defendant from denying requests to inspect the "Party/Campaign Use Voter File" or similar voter registration lists in the future or conditioning access to the same on compliance with the impermissible use restrictions described herein.

6. Ordering the Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

7. Granting the Foundation further relief that this Court deems just and proper.

Dated: November 29, 2021.

For the Plaintiff Public Interest Legal Foundation:

    /s/ *Steve C. Whiting*
Steve C. Whiting, Maine Bar No. 559
The Whiting Law Firm
75 Pearl Street, Ste. 207
Portland, ME  04101
Tel: (207) 780-0681
Fax: (207) 780-0682
steve@whitinglawfirm.com

    /s/ Noel H. Johnson
Noel H. Johnson* (Wisconsin Bar #1068004)
Kaylan L. Phillips* (Indiana Bar #30405-84)
Public Interest Legal Foundation, Inc.
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org
* *Motion for admission pro hac vice granted*

*Attorneys for Plaintiff Public Interest Legal Foundation*