UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>SHENNA BELLOWS, in her official capacity as Secretary of State for the State of Maine,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>) Docket no. 1:20-cv-00061-GZS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON MOTION TO DISMISS AMENDED COMPLAINT**

Before the Court is Defendant Secretary Shenna Bellows' Motion to Dismiss (ECF No. 58). Having considered the Motion and related filings (ECF Nos. 59 & 60), the Court GRANTS IN PART and DENIES IN PART the Motion.

**I.   LEGAL STANDARD**

The pending Motion invokes two separate bases for dismissal under Federal Rule of Civil Procedure 12(b): lack of subject matter jurisdiction due to mootness and failure to state a claim. See Fed. R. Civ. P. 12(b)(1) & (6).

Generally, a federal court is obligated to ensure the existence of subject matter jurisdiction before considering the merits of any complaint. See, e.g., United States v. University of Mass., Worcester, 812 F.3d 35, 44 (1st Cir. 2016). Plaintiffs generally bear the burden of demonstrating subject matter jurisdiction. See, e.g., Woo v. Spackman, 988 F.3d 47, 53 (1st Cir. 2021). Faced with a motion to dismiss under Rule 12(b)(1), the Court applies the same "plausibility standard applicable under Rule 12(b)(6)" to the operative complaint. Hochendoner v. Genzyme Corp., 823

F.3d 724, 730 (1st Cir. 2016). However, the Court may also consider additional materials submitted by either side that allow it to resolve the jurisdictional challenge. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (noting that "plaintiff's well-pleaded factual allegations . . . [may be] augmented by an explanatory affidavit or other repository of uncontested facts").

Once the Court determines it has jurisdiction over the asserted claims, it may consider whether the operative complaint contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, [the Court] 'perform[s] a two-step analysis.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). First, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. University of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678).

Second, the Court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id., 676 F.3d at 224 (quoting Iqbal, 556 U.S. at 678). "This standard is 'not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar, 818 F.3d at 18 (quoting Iqbal, 556 U.S. at 678); see also Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth., 4 F.4th 63, 70 (1st Cir. 2021) (same). "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernández v. Fortuño-Burset,

640 F.3d 1, 12 (1st Cir. 2011) (internal citations and quotation marks omitted).  Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability" drawn from the facts. Id. at 13.

In assessing whether a complaint adequately states a claim, the Court considers the "facts and documents that are part of or incorporated into the complaint."  United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 39 (1st Cir. 2011) (internal quotation marks omitted).  But, the Court may also "supplement those facts with facts 'gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'"  González v. Vélez, 864 F.3d 45, 48 (1st Cir. 2017) (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

## II.   BACKGROUND

Plaintiff Public Interest Legal Foundation ("PILF") is an Indiana non-profit organization that "seeks to promote the integrity of elections nationwide through research, education, remedial programs, and litigation."  (Am. Compl. (ECF No. 55), PageID # 497.)  On October 17, 2019, PILF wrote to the then-Secretary of State of Maine.  (See Pl. Ex. A (ECF No. 55-1).)  PILF's letter informed the Secretary that it sought an electronic copy of Maine's "statewide voter registration list" ("Voter File"),[1] but acknowledged that it did not meet any of the state statutory criteria then in effect for access to the Voter File.  (See id.); see also 21-A M.R.S.A. § 196-A(1) (Supp. 2021) ("Access to data from the central voter registration system"), amended by P.L. 2021 ch. 310, §§ 1–

---

[1] Subsequent email communication between the parties clarified that PILF's use of the term "statewide voter registration list" corresponded to what Maine calls the "party/campaign use voter file." See Pl. Exs. F & G (ECF Nos. 55-6 & 55-7, PageID #s 522–24).  This information, which the Court refers to as the "Voter File," consists of the following information:  "the voter's name, residence address, mailing address, year of birth, enrollment status, electoral districts, voter status, date of registration, date of change of the voter record if applicable, voter participation history, voter record number and any special designations indicating uniformed service voters, overseas voters or township voters."  21-A M.R.S.A. § 196-A(1)(B).  The Voter File is stored in Maine's "central voter registration system."  See id.

2 (eff. Oct. 18, 2021). PILF claimed that Maine's denial of access to the Voter File violated the Public Disclosure Provision of the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501–20511. See 52 U.S.C. § 20507(i). After exchanging several subsequent communications with PILF seeking to accommodate the organization's needs, the Secretary ultimately concluded in February 2020 that she did not have authority to release the Voter File to PILF. (See Pl. Exs. B–G (ECF Nos. 55-2–55-7).) Shortly thereafter, on February 19, 2020, PILF filed suit against the Secretary seeking declaratory and injunctive relief under the NVRA.[2] Last spring, the parties filed Cross-Motions for Summary Judgment (ECF Nos. 35 & 39).

However, while the Cross-Motions were under advisement, the Maine Legislature added a new exception, "Exception J," to the general confidentiality regime prohibiting disclosure of the Voter File. See P.L. 2021, ch. 310 § 2. Under Exception J, an "individual or organization that is evaluating Maine's compliance with its voter list maintenance obligations may . . . purchase" the Voter File. 21-A M.R.S.A. § 196-A(1)(J). The amended statute also provides for "privacy protections" that limit use and dissemination of voters' data. (Def. Mot. (ECF No. 58), PageID # 532.) Specifically, anyone obtaining the Voter File under Exception J is forbidden to

> (1) Sell, transfer to another person or use the voter information or any part of the information for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations; or
>
> (2) Cause the voter information or any part of the voter information that identifies, or that could be used with other information to identify, a specific voter, including but not limited to a voter's name, residence address or street address, to be made accessible by the general public on the Internet or through other means.

21-A M.R.S.A. § 196-A(1)(J). To obtain the Voter File, an applicant organization must complete a standardized form. (See Pl. Response Ex. A (ECF No. 59-1).) The form reminds applicants

---

[2] Shenna Bellows, the current Secretary of State of Maine, has been substituted for former Secretary Matthew Dunlap pursuant to Federal Rule of Civil Procedure 25(d).

4

seeking the Voter File under Exception J that the data is "[o]nly for use by an individual or organization to evaluate the State's compliance with NVRA list maintenance obligations." (Id., PageID # 576.) The form also requires applicants to certify the following: "I, the undersigned requestor of Information from Maine's Central Voter Registration (CVR) system, understand that the information I receive from the CVR is subject to the restrictions on use and redistribution of data, as provided in 21-A MRSA, section 196-A." (Id., PageID # 577.)

The Court directed PILF to seek leave to amend its Complaint after the statutory changes took effect in October 2021, and denied the Cross-Motions for Summary Judgment as moot. (See 08/31/21 Proc. Order & Rep. of Conf. (ECF No. 50).) PILF filed an Amended Complaint, which the Secretary timely moved to dismiss. The Amended Complaint alleges three separate violations of the NVRA: (1) denial of access to the Voter File (Count I); (2) impermissible restrictions on use of the Voter File data (Count II); and (3) impermissible fines stemming from those restrictions (Count III).

### III. DISCUSSION

#### A. Count I

Defendant seeks dismissal of Count I on the ground that the intervening change in Maine law renders it moot under Federal Rule of Civil Procedure 12(b)(1), or alternatively that Plaintiff has failed to state a plausible claim for relief under Rule 12(b)(6). The Court addresses Defendant's mootness argument first because it implicates the Court's subject matter jurisdiction. See Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71–72 (2013); United States v. Millenium Labs., Inc., 923 F.3d 240, 248 (1st Cir. 2019).

Count I of the Amended Complaint alleges that Plaintiff has been denied access to information that must be publicly available under the NVRA's Public Disclosure Provision. The Public Disclosure Provision states as follows:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1). Count I alleges not that Plaintiff cannot obtain the Voter File under any circumstances, but rather that to do so it must agree to Maine's statutory restrictions on use and dissemination, which it claims are preempted by the NVRA. In its own words, Plaintiff claims that Maine's use of its request form for the Voter File amounts to a "functional[]" denial of the Voter File in violation of the Public Disclosure Provision. (Am. Compl., PageID # 507.) Defendant asserts this claim is moot, arguing that the Voter File is "now available to PILF" if it "completes and submits the request form." (Def. Mot., PageID # 534.)

"At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." Uzuegbunam v. Preczewski, 141 S. Ct. 792, 796 (2021). "A case becomes moot—and therefore no longer a Case or Controversy for the purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (internal quotation marks omitted). Where a challenged state law is amended during the pendency of litigation, the amendment may moot the case by affording a plaintiff the remedy she seeks. See Town of Portsmouth v. Lewis, 813 F.3d 54, 58–59 (1st Cir. 2016) (affirming

dismissal of a suit for declaratory and injunctive relief as moot where a change in state law led to a cessation of the conduct complained of). Where a plaintiff alleges that an amended statute continues to violate his legal rights, however, it may be appropriate to continue the litigation under amended pleadings. Cf. New York State Rifle & Pistol Ass'n, Inc. v. City of N.Y., 140 S. Ct. 1525, 1526–27 (2020).

Through the newly created Exception J to the Maine Voter File disclosure statute, Plaintiff can now obtain without the Court's assistance information previously inaccessible to it. Its claim that Defendant is violating the Public Disclosure Provision, which requires a state to "make available" certain election registration records, is thus moot. 52 U.S.C. § 20507(i)(1); see Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004) ("[A] case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless."). In short, no live controversy exists regarding access to the data PILF seeks, and the Court therefore concludes Count I is subject to dismissal. See Bayley's Campground, Inc. v. Mills, 985 F.3d 153, 157 (1st Cir. 2021).

The Court alternatively concludes that Plaintiff's theory of "functional" denial of access does not state a plausible claim for relief and thus Count I is subject to dismissal under Rule 12(b)(6). The Public Disclosure Provision simply requires that a state make covered records available. See 52 U.S.C. § 20507(i)(1). Plaintiff does not allege that Maine's new regime withholds covered records from it, and so the Public Disclosure Provision does not entitle it to relief. The Court views Plaintiff's "functional denial" argument instead as a preemption-based challenge to the conditions. Plaintiff's arguments for preemption are appropriately addressed under Counts II and III, where they are raised directly.

### B. Counts II & III

Defendant further asserts that Counts II and III of the Amended Complaint fail to state plausible claims for relief.[3] In Count II, Plaintiff claims an NVRA violation based on the use restrictions imposed by 21-A M.R.S.A. § 196-A(1)(J). In Count III, Plaintiff claims an NVRA violation based on the fines imposed by 21-A M.R.S.A. § 196-A(5). At the heart of each count is an assertion that the NVRA preempts the conditions Maine imposes on the use and dissemination of its Voter File.[4] More specifically, Plaintiff claims that Maine's restrictions on use and dissemination of its Voter File "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives" of the NVRA. Capron v. Office of Att'y Gen. of Mass., 944 F.3d 9, 26 (1st Cir. 2019) (internal quotation marks omitted).

Two principles govern claims of preemption, including obstacle preemption. "First, the purpose of Congress is the ultimate touchstone in every pre-emption case." Wyeth v. Levine, 555 U.S. 555, 565 (2009) (internal quotation marks omitted). "Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied," a presumption against preemption applies until rebutted by the "clear and manifest purpose of Congress." Id. (internal quotation marks and alterations omitted). However, this presumption does not apply to legislation passed pursuant to the Elections Clause "[b]ecause the power the Elections Clause confers is none other than the power to pre-empt," and thus "the reasonable assumption is that the statutory text accurately communicates the scope of Congress's

---

[3] Defendant also cursorily adverts to an argument in its Reply that Plaintiff's claims are unripe because Plaintiff has not yet applied for the Voter File under Exception J. The Court notes that undeveloped arguments are ordinarily not entertained. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Furthermore, the Court is satisfied of the ripeness of Counts II and III.

[4] Because neither party has argued otherwise, the Court assumes for present purposes that Plaintiff's preemption claims fit within the scope of the private right of action conferred by the NVRA at 52 U.S.C. § 20510(b)(1) ("A person who is aggrieved by a violation of [the NVRA]" is entitled to bring suit, provided certain notice requirements, not contested here, are met.).

pre-emptive intent." Arizona v. Inter Tribal Council of Ariz., Inc., 570 U.S. 1, 14 (2013).  Because the NVRA is such a law, the presumption against preemption does not apply in this case.  See id. at 13–14.

In support of its claim that Maine's restrictions on use and dissemination of the Voter File stand as obstacles to the NVRA, Plaintiff points again to the NVRA's Public Disclosure Provision. According to Plaintiff's theory, the Public Disclosure Provision "'conveys Congress's intention that the public should be monitoring the state of the voter files and the adequacy of election officials' list maintenance programs.'"  (Am. Compl., PageID # 500 (quoting Bellitto v. Snipes, No. 0:16-cv-61474-BB, 2018 U.S. Dist. LEXIS 103617, at *12–13 (S.D. Fla. Mar. 30, 2018)) (internal alteration omitted).)  By limiting Plaintiff's ability to use Maine's Voter File to evaluate other states' compliance with their respective NVRA obligations and to release all or portions of the Voter File publicly, Plaintiff claims, Maine's law stands as an obstacle to the achievement of the purposes of the NVRA.[5]  (See id., PageID # 509; Pl. Response (ECF No. 59), PageID # 571.)

For purposes of the pending Motion, both sides agree that the Court must first determine whether the Voter File is covered by the Public Disclosure Provision.  (See Def. Mot., PageID #s 536–41; Pl. Response, PageID #s 557–66.)  Via the NVRA, Congress sought "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. §§ 20501(b)(3) & (4).  To further these purposes, Congress created both the Public Disclosure Provision and a private enforcement mechanism available in the event of a state's violation of the Provision.  See id. §§ 20507 & 20510; see also Judicial Watch, Inc. v.

---

[5] While the Court accepts this claim as a well-pled allegation for purposes of the present motion, the Court also acknowledges uncertainty as to how Maine will enforce and interpret the privacy protections imbedded into Exception J.  See 21-A M.R.S.A. §§ 196-A(1)(J)(1) & (2).  Ultimately, a capacious interpretation of the permissible uses under this amended language may include all of Plaintiff's evaluation activities and obviate the concerns animating Counts II and III.  However, in the absence of a more developed factual record, the Court cannot presently conclude as a matter of law that the language of Exception J does not limit Plaintiff's ability to use Maine's Voter File to evaluate NVRA compliance by other states.

Griswold, --- F. Supp. 3d ---, 2021 WL 3631309, at *9 (D. Colo. Aug. 16, 2021). If Congress did not require that a state make its Voter File publicly available by including the Voter File within the scope of the NVRA's Public Disclosure Provision, it would follow that Congress did not intend the NVRA to affect a state's ability to withhold the Voter File. Cf. Consumer Data Indus. Ass'n v. Frey, --- F.4th ---, 2022 WL 405956, at *5 (1st Cir. Feb. 10, 2022) ("A legislature 'says in a statute what it means and means in a statute what it says there.'") (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992)). And, because preemption is ultimately a function of Congress' intent, see Wyeth, 555 U.S. at 565, a state law regulating disclosure of a record not falling under the Public Disclosure Provision cannot plausibly be preempted by the NVRA.

Faced with the need to decide the issue, the Court concludes that the Voter File is a "record[] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" within the meaning of the Public Disclosure Provision and thus is subject to disclosure under the NVRA. 52 U.S.C. § 20507(i)(1). In making this determination, the Court finds persuasive and adopts the relevant reasoning of the Fourth Circuit and a federal district court in Maryland. See Project Vote/Voting for America v. Long, 682 F.3d 331, 335–36 (4th Cir. 2012); Judicial Watch, Inc. v. Lamone, 399 F. Supp. 3d 425, 437–38 (D. Md. 2019).

When interpreting the Public Disclosure Provision, like any other statute, "the plain meaning of [the] statute's text must be given effect." New Hampshire Lottery Comm'n v. Rosen, 986 F.3d 38, 55 (1st Cir. 2021) (internal alterations and quotation marks omitted). The Voter File is a compilation of voter registration applications. See 21-A M.R.S.A. §§ 122(1) & 196-A(1)(B) (listing information contained in the Voter File); Lamone, 399 F. Supp. 3d at 440. When a state registrar reviews voter applications and enters information from those applications into the "central

voter registration system" from which the Voter File is produced, she engages in a "program" or "activity." See Project Vote, 682 F.3d at 335. "Moreover, the 'program' and 'activity' of evaluating voter registration applications is plainly 'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.' . . . It is unclear what other purpose it would serve." Id. Finally, the Voter File is a "record[] concerning the implementation of" such a "program[] and activit[y]" because it represents the end result of the entry of voter registration applications, as described above. 52 U.S.C. § 20507(i)(1); see Project Vote, 682 F.3d at 335–36.

Having concluded that the Voter File falls within the ambit of the NVRA's Public Disclosure Provision, the Court concludes that Plaintiff has pleaded sufficient facts that, when taken as true, establish a plausible claim of obstacle preemption. See Lamone, 399 F. Supp. 3d at 445 (finding that a state law restricting voter file access to an in-state resident was obstacle preempted by the NVRA because the law excluded nationwide enforcement by excluding organizations with "resources and expertise that few individuals can marshal."). Plaintiff alleges that it seeks to use Maine's Voter File to audit other states' compliance with their NVRA obligations, but that the conditions imposed by Maine statute prevent it from doing so. (See Am. Compl., PageID #s 503–05 & 509–10.) The NVRA imposes obligations on all states. See 52 U.S.C. § 20502(4). PILF is an organization that operates nationwide, using information obtained from various states. (See Am. Compl., PageID # 497.) It is "plausible, not . . . merely conceivable," that Plaintiff's proposed activities further the NVRA's goals of "protect[ing] the integrity of the electoral process; and . . . ensur[ing] that accurate and current voter registration rolls are maintained." Ocasio-Hernández, 640 F.3d at 12; 52 U.S.C. §§ 20501(b)(3), (4). It is also plausibly alleged that Maine's disclosure law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the NVRA because it may inhibit Plaintiff from

11

comparing one state's data to another or from releasing that data publicly. Hines v. Davidowitz, 312 U.S. 52, 67 (1941); (see also Pl. Response, PageID #571.).

Ultimate resolution of the preemption issues raised by Counts II and III will depend on the development of a fuller factual record, as well as on interpretation of the restrictions Maine's law actually imposes. Nevertheless, at this stage—particularly given that the NVRA is not subject to the presumption against preemption, see Inter Tribal Council of Ariz., 570 U.S. at 14—Counts II and III plausibly allege a violation of the NVRA. Accordingly, Counts II and III survive Plaintiff's request for dismissal.

## IV.   CONCLUSION

For the reasons stated, the Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 58) as to Count I, but DENIES the Motion as to Counts II and III.

SO ORDERED.

                                                    /s/ George Z. Singal
                                                    United States District Judge

Dated this 4th day of March, 2022.