**United States District Court**
**District of Maine**

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.** | |
| *Plaintiff,* | |
| *v.* | |
| **SHENNA BELLOWS,** in her official capacity as the Secretary of State for the State of Maine | Case No. 1:20-cv-00061-GZS |
| *Defendant.* | |

**Plaintiff Public Interest Legal Foundation's**
**Motion for Summary Judgment and Memorandum of Law**

## **Table of Contents**

Table of Authorities ..................................................................................................... ii

Introduction .................................................................................................................... 1

Summary of Undisputed Material Facts ..................................................................... 2

Argument ....................................................................................................................... 5

    I.      Summary Judgment Standard .............................................................. 5

    II.     The Foundation Is Entitled to Summary Judgment .......................... 5

          A.  The Foundation Requested the Voter File
              and the Secretary Denied the Foundation's Request ................... 5

          B.  The Secretary is Unlawfully Denying the Foundation
              Access to the Voter File ................................................................ 5

          C.  The NVRA Preempts and Supersedes Maine Law ...................... 6

              1.  Congress Intended for Public Oversight and Enforcement
                   of Voter List Maintenance .............................................. 7

              2.  The Use Ban Is Preempted ............................................... 9

              3.  The Enforcement Ban Is Preempted ............................... 11

              4.  The Make-Available Ban Is Preempted .......................... 13

              5.  The Fines Are Preempted ................................................ 15

Conclusion .................................................................................................................... 15

## Table of Authorities

*Cases*

*Arizona v. Inter Tribal Council of Arizona*,
570 U.S. 1 (2013) ................................................................................. 6, 10-11

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
178 F.3d 350 (5th Cir. 1999) .................................................................5, 13

*Bellitto v. Snipes*,
No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617 (S.D. Fla. Mar. 30, 2018)....5, 12, 18

*Bennett v. Spear*,
520 U.S. 154 (1997) ...............................................................................13

*Capron v. Office of the AG of Mass.*,
944 F.3d 9 (1st Cir. 2019) .......................................................................11

*Ex parte Siebold*,
100 U. S. 371 (1880) ........................................................................ 10-11

*Husted v. A. Philip Randolph Inst.*,
138 S. Ct. 1833 (2018) ...........................................................................15

*Ingersoll-Rand Co. v. McClendon*,
498 U.S. 133 (1990) ...............................................................................11

*Judicial Watch, Inc. v. Lamone*,
399 F. Supp. 3d 425 (D. Md. 2019) ...................................................... 13-14

*Latin Am. Music Co. v. Archdiocese*,
499 F.3d 32 (1st Cir. 2007) ......................................................................9

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ...............................................................................11

*N.H. Right to Life v. United States HHS*,
778 F.3d 43 (1st Cir. 2015) ................................................................12 n.2

*Oneok, Inc. v. Learjet, Inc.*,
575 U.S. 373 (2015) ...............................................................................11

*Project Vote / Voting for Am., Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012) ..............................................................12, 14

*Pub. Int. Legal Found. v. Chapman*,
No. 1:19-CV-622, 2022 U.S. Dist. LEXIS 60585 (M.D. Pa. Mar. 31, 2022) ..............13

*Reno v. ACLU*,
521 U.S. 844 (1997)................................................................................16

*United States v. Machias Sav. Bank*,
No. 1:21-mc-00320-LEW, 2022 U.S. Dist. LEXIS 2835 (D. Me. Jan. 6, 2022)..........11

*United States v. Safehouse*,
408 F. Supp. 3d 583 (E.D. Pa. 2019) .........................................................16

*United States v. Stevens*,
    559 U.S. 460 (2010)...................................................................................16-17

*United States v. Treasury Employees*,
    513 U.S. 454 (1995)........................................................................................17

*Virginia v. American Booksellers Assn., Inc.*,
    484 U.S. 383 (1988).........................................................................................16

**Statutes and Rules**

21-A M.R.S. § 196-A(5) ..............................................................................5, 15, 17

21-A M.R.S. § 196-A(1)(B).............................................................................5 n.1

21-A M.R.S. § 196-A(1)(J)..............................................................................14-15

21-A M.R.S. § 196-A(1)(J)(1) ..............................................................................16

21-A M.R.S. § 196-A(1)(J)(2) .........................................................................17-18

52 U.S.C. § 20507(a)(3)(B) ..................................................................................12

52 U.S.C. § 20507(a)(4).........................................................................................12

52 U.S.C. § 20507(a)(4)(B) ...................................................................................15

52 U.S.C. § 20501(b)(1)-(4) ..................................................................................11

52 U.S.C. § 20501(b)(3) ...................................................................................5, 14

52 U.S.C. § 20501(b)(4) ...............................................................................5, 14, 18

52 U.S.C. § 20507(i)(1) ......................................................................5, 12, 12 n2

52 U.S.C. § 20507(i)(2) ........................................................................................17

52 U.S.C. § 20510(b) ..........................................................................5-6, 13, 15

Local Rule 56 .........................................................................................................5

Fed. R. Civ. P. 56..................................................................................................5

Fed. R. Civ. P. 56(c) ..............................................................................................9

**Other Authorities**

Farley, *New York coronavirus exodus fuels 'gangbusters' Maine real estate boom*, New York
Post, Oct. 15, 2020, https://nypost.com/2020/10/15/new-york-coronavirus-exodus-fuels-maine-
real-estate-boom/.............................................................................................15 n.4

https://www.merriam-webster.com/dictionary/obstacle ............................................14 n.3

https://publicinterestlegal.org/cases/ .........................................................................17 n.5

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, Plaintiff Public Interest Legal Foundation ("Foundation"), hereby moves for summary judgment on its three-count Amended Complaint. (ECF No. 55.) The Foundation submits that there are no issues of material fact genuinely in dispute and the Foundation is entitled to judgment as a matter of law.

### Introduction

The Court previously held that Maine's Voter File[1] is "subject to disclosure under the NVRA." (ECF No. 61 at 10.) The remaining question is whether the National Voter Registration Act ("NVRA") preempts Maine's restrictions on the Voter File's use. The answer is "yes."

Through the NVRA, Congress sought "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). To accomplish these goals, Congress created the Public Disclosure Provision, 52 U.S.C. § 20507(i)(1), and a private right of action, 52 U.S.C. 20510(b). These two components serve vital oversight, *Bellitto v. Snipes*, No. 0:16-cv-61474-BB, 2018 U.S. Dist. LEXIS 103617, at *12–13 (S.D. Fla. Mar. 30, 2018), and enforcement functions, *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 365 (5th Cir. 1999), which ultimately serve the NVRA's purposes. In short, Congress intended voter list maintenance to be transparent, because monitoring the activities of the officials who maintain the rolls safeguards the right to vote.

Maine law facially prohibits the activities Congress intended. In particular, it prohibits the public from using Maine's Voter File to study and remedy list maintenance errors in all other states, where, for example, duplicate registrations may exist with Maine's registrations. Anyone who engages in good government work using Maine's Voter File risks crushing fines. 21-A

---

[1] The "Voter File" contains the information described in 21-A M.R.S.A. § 196-A(1)(B). The parties have referred to the Voter File as the "Party/Campaign Use Voter File" in pre-litigation correspondence and in prior motions. (*See* ECF No. 61 at 3 n.1.)

1

M.R.S.A. § 196-A(5). Preemption is ultimately a function of Congress's intent and it does not follow that Congress would make list maintenance records public so that states may then prosecute and fine citizens who exercise federal rights. Maine law is plainly an obstacle to the accomplishment of the NVRA's purposes and is therefore preempted and invalid under the United States Constitution. *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013). For these reasons, judgment should enter for the Foundation.

<u>**Summary of Undisputed Material Facts**</u>

1.      Maine's Voter File is a report generated from Maine's Central Voter Registration System ("CVR") that contains the following voter record information for each registered voter who is eligible to vote in Maine as of the date the report is generated:

> [T]he voter's name, residence address, mailing address, year of birth, enrollment status, electoral districts, voter status, date of registration, date of change of the voter record if applicable, voter participation history, voter record number and any special designations indicating uniformed service voters, overseas voters or township voters.

21-A M.R.S. § 196-A(1)(B).

2.      The Foundation requested a copy of Maine's Voter File pursuant to the NVRA's Public Disclosure Provision. Joint Stipulation of Material Facts (ECF No. 73) ¶¶ 1, 8 ("Fact Stip."); ECF No. 55-1.

3.      Defendant Secretary of State ("Secretary") denied the Foundation's request for the Voter File. Fact Stip. ¶¶ 2, 9-10; ECF Nos. 55-2, 55-5, and 55-7.

4.      As required by 52 U.S.C. § 20510(b), prior to filing this action, the Foundation notified the Secretary in writing that her office is in violation of the NVRA for failure to permit inspection and duplication of records as required by the NVRA's Public Disclosure Provision. Fact Stip. ¶ 3; ECF No. 55-3.

2

5.      The Secretary did not cure her violation of the NVRA in the time afforded by the NVRA. *See* Fact Stip. ¶¶ 6-9; Plaintiff's Statement of Material Facts ¶¶ 6-27 ("Plaintiff's SMF").

6.      The Secretary has not provided the "Party/Campaign Use Voter File" to the Foundation. Fact Stip. ¶ 10.

7.      The Foundation's regular programmatic activities include, but are not limited to (1) evaluating how and whether states and/or local governments are complying with voter list maintenance laws; (2) pursuing legal action to enforce state and federal voter list maintenance laws; (3) analyzing registration and voting data; (4) educating the public through published reports, blog posts, press releases, newsletters, and emails; and, (5) providing voter list maintenance leads and potentially irregular registration and voting data to state and local governments. Plaintiff's SMF ¶ 28.

8.      The Foundation regularly analyzes voter participation history to study (1) enforcement of voter list maintenance laws that depend on voting or attempted voting; (2) whether any registrant cast more than one vote in the same election in the same jurisdiction; (3) whether any registrant cast votes in two or more local jurisdictions or states in the same election; (4) whether votes were cast by ineligible registrants; (5) whether provisional voting laws are properly enforced; and, (6) the extent of voter participation. Plaintiff's SMF ¶ 29.

9.      The Foundation uses a state's voter roll and other voter registration and voting records to monitor, study, and evaluate that particular state's voter list maintenance activities and also those of other jurisdictions and states. Plaintiff's SMF ¶ 30.

10.     The Foundation also uses a state's voter file and other voter registration and voting records to enforce voter list maintenance laws. Plaintiff's SMF ¶ 31.

11.     The Foundation also uses a state's voter roll and other voter registration and voting records to educate the general public and government officials, including through the Internet. Plaintiff's SMF ¶ 32.

12.     The Foundation also uses a state's voter roll and other voter registration and voting records to provide voter list maintenance leads and potentially irregular registration and voting data to state and local governments. Plaintiff's SMF ¶ 33.

13.     The Foundation uses registrants' personally identifying information—such as name and address—to conduct the regular, programmatic activities described in the above paragraphs. Plaintiff's SMF ¶ 34.

14.     The Foundation currently intends to use the Voter File to conduct the regular, programmatic activities described in the above paragraphs, including (1) monitoring, study, analyzing, and evaluating the list maintenance activities of other jurisdictions and states; (2) enforcing voter list maintenance laws in Maine and in other states, including filing actions under the NVRA's private-right-of-action provision; (3) educating the general public and government officials about list maintenance activities in Maine and other states, including through the Internet; (4) sharing voter list maintenance leads and potentially irregular registration and voting data to state and local governments within and outside Maine. Plaintiff's SMF ¶ 35.

15.     Where necessary, the Foundation intends to use personally identifying information—such as name, address, and voter identification number—to conduct those activities. Plaintiff's SMF ¶ 36.

16.     The Foundation intends to develop more specific plans for the Voter File after Defendant provides it to the Foundation. Plaintiff's SMF ¶ 37.

## Argument

### I.    Summary Judgment Standard

"Summary judgment is appropriate when the facts properly supported by the record and taken in the light most favorable to the non-moving party 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Latin Am. Music Co. v. Archdiocese*, 499 F.3d 32, 38 (1st Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Cross motions for summary judgment do not change the standard." *Id*.

### II.    The Foundation Is Entitled to Summary Judgment.

#### A.    The Foundation Requested the Voter File and the Secretary Denied the Foundation's Request.

It is undisputed that the prior to the filing of this action, the Foundation requested the Voter File from the Secretary. Fact Stip. ¶ 8. The Foundation's request was made pursuant to the NVRA's Public Disclosure Provision. Fact Stip. ¶¶ 1, 3. It is also undisputed that the Secretary denied the Foundation's request for Maine's Voter File, Fact Stip. ¶ 9, and that, even years later, the Secretary has not provided the Voter File to the Foundation, Fact Stip. ¶ 10. These facts are not genuinely in dispute.

#### B.    The Secretary Is Unlawfully Denying the Foundation Access to the Voter File.

The Foundation is entitled to judgment on its claim that the Secretary is unlawfully denying the Foundation access to the Voter File. (ECF No. 55 at 12 (Count I).) While it is true that Maine law has been amended to allow organizations like the Foundation access to the Voter File (with unlawful strings attached), the Secretary is in fact not allowing the Foundation that access. The Secretary explicitly concedes that she "has not provided the 'Party/Campaign Use Voter File' to the Foundation." Fact Stip. ¶ 10. The Court has determined that the Foundation's

5

claim is ripe, (ECF No. 61 at 8 n.3.), and that the Voter File is "subject to disclosure under the NVRA," (ECF No. 61 at 10). The Foundation is therefore entitled to judgment on this claim.

### C.  The NVRA Preempts and Supersedes Maine Law.

The Foundation challenges the following three restrictions and attached fines: **(1)** the prohibition on selling, transferring, or using the Voter File for "for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations," (ECF No. 55 ¶¶ 78-86) ("Use Ban"), **(2)** the prohibition on causing any identifying information to be made accessible by the public, (*id.* ¶ 49) ("Make-Available Ban"); **(3)** the prohibition on using the Voter File to enforce the NVRA, (*id.* ¶ 47) ("Enforcement Ban"); and, **(4)** the fines imposed for violating those prohibitions, (*id.* ¶¶ 87-94) ("Fines").

The challenged restrictions facially prohibit activities that the NVRA permits, intends, and encourages, and which further the NVRA's purposes. The Foundation intends to engage in those prohibited activities but cannot due to the threat of crushing financial penalties. The challenged restrictions thus stand as obstacles to the NVRA's purposes are therefore preempted and unenforceable under Article VI, Clause 2 of the United States Constitution (the Supremacy Clause), Article I, Section 4, Clause I of the United States Constitution (the Elections Clause), and the Supreme Court's decision in *Inter Tribal*, 570 U.S. 1.

In *Inter Tribal*, the Supreme Court held in unambiguous terms that the NVRA is superior to any conflicting state laws. In such situations, "the state law, 'so far as the conflict extends, ceases to be operative.'" *Inter Tribal*, 570 U.S. at 9 (quoting *Ex parte Siebold*, 100 U. S. 371, 384 (1880)). The Court found that:

> When Congress legislates with respect to the "Times, Places and Manner" of holding congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States. Because the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that

> *the statutory text accurately communicates the scope of Congress's pre-emptive intent*…. In sum, there is no compelling reason not to read Elections Clause legislation simply to mean what it says.

*Id*. at 14-15 (emphasis added). The so-called presumption against preemption "does not hold" when Congress acts under the Elections Clause. *Inter Tribal*, 570 U.S. at 14.

Federal preemption of state law "may be express or implied." *United States v. Machias Sav. Bank*, No. 1:21-mc-00320-LEW, 2022 U.S. Dist. LEXIS 2835, at *4 (D. Me. Jan. 6, 2022) (citations and quotations omitted). There are two types of implied preemption: "field preemption and conflict preemption, which itself comes in two varieties: obstacle preemption and impossibility preemption." *Capron v. Office of the AG of Mass.*, 944 F.3d 9, 21 (1st Cir. 2019). "Conflict preemption" occurs where "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (citations and quotations omitted).

### 1. Congress Intended for Public Oversight and Enforcement of Voter List Maintenance.

Because "the purpose of Congress is the ultimate touch-stone in every pre-emption case," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (citations and quotations omitted), the Court must first consider the NVRA's purposes, which are the following:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
>
> (2) to make it possible for Federal, State, and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
>
> (3) to protect the integrity of the electoral process; and
>
> (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b)(1)-(4). "To discern Congress' intent [the Court] examine[s] the explicit statutory language and the structure and purpose of the statute." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990).

7

To help accomplish the NVRA's objectives, Congress required each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" due to death or relocation. 52 U.S.C. § 20507(a)(4). Congress also envisioned that states would permit removal for other reasons, such as felony convictions. 52 U.S.C. § 20507(a)(3)(B).

Congress also provided a sweeping oversight mechanism, which gives the public the right to inspect "all" voter list maintenance records. 52 U.S.C. 20507(i)(1). This Public Disclosure Provision does not promote transparency for the mere sake of transparency. Rather, the Public Disclosure Provision is a means to accomplish the NVRA's objectives—namely, accurate voter rolls and election integrity. 52 U.S.C. § 20501(b)(3)-(4).

The Fourth Circuit prudently observed that the Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote*, 682 F.3d at 334-35. The court recognized further that "[i]t is selfevident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls." *Id.* at 339. In other words, Congress made voter list maintenance transparent so errors would be found and corrected.[2]

Another court has similarly observed that the Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs." *Bellitto*, 2018 U.S. Dist. LEXIS

---

[2] The First Circuit has recognized that "FOIA is the legislative embodiment of Justice Brandeis's famous adage, '[s]unlight is … the best of disinfectants[.]'" *N.H. Right to Life v. United States HHS*, 778 F.3d 43, 48-49 (1st Cir. 2015) (quoting Louis D. Brandeis, Other People's Money 92 (Frederick A. Stokes Co. 1914)). The NVRA's Public Disclosure Provision embodies a similar maxim, but with just two minor disclosure exemptions, *see* 52 U.S.C. 20507(i)(1), the Public Disclosure Provision is a much stronger "disinfectant."

103617, at *12-13. In other words, Congress intended for the public to study voter registration records and evaluate compliance with state and federal law.

More recently, the Middle District of Pennsylvania granted summary judgment on a public records claim while finding that "Congress struck such a balance when it enacted NVRA, deciding transparency in how states determine voter eligibility—the vital bedrock of our electoral system—is generally paramount." *Pub. Int. Legal Found. v. Chapman*, No. 1:19-CV-622, 2022 U.S. Dist. LEXIS 60585, at *17-18 (M.D. Pa. Mar. 31, 2022).

Congress did not intend only for public oversight; Congress intended that the public would enforce the NVRA's mandates, as demonstrated by Congress's inclusion of a private-right-of-action provision in the NVRA, 52 U.S.C. § 20510(b). The Fifth Circuit has recognized that this part of the NVRA was meant to "encourage enforcement by so-called 'private attorneys general.'" *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 364 (5th Cir. 1999) (quoting *Bennett v. Spear*, 520 U.S. 154, 157 (1997)).

The Court must ask: Do Maine's use restrictions and fines make achieving the NVRA's purposes impossible or stand as obstacles to their fulfillment? The answer is "yes."

### 2.  The Use Ban Is Preempted.

The Use Ban prohibits under financial penalty the sale, transfer, or use of the Voter File "for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations[.]" 21-A M.R.S. § 196-A(J)(1). Using the Voter File to study, evaluate, or enforce voter list maintenance activities in *any other state*, something that the Foundation does regularly, *see e.g.,* Plaintiff's SMF ¶ 30, is not permitted.

*Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) is instructive. The *Judicial Watch* court held that the NVRA's Public Disclosure Provision preempts a Maryland

9

law that required an applicant requesting a voter registration list to be a Maryland registered voter. 399 F. Supp. 3d at 443- 445. The court found that limiting access to Maryland voters "is an obstacle to the accomplishment of the NVRA's purposes"—namely, "protect[ing] the integrity of the electoral process," and "ensur[ing] that accurate and current voter registration rolls are maintained," 52 U.S.C. § 20501(b)(3)-(4). *Judicial Watch*, 399 F. Supp. 3d at 445. The court specifically recognized that "Section 8(i) of the NVRA provides for the disclosure of voter registrations in order to 'assist the identification of both error and fraud in the preparation and maintenance of voter rolls.'" *Id*. (quoting *Project Vote*, 682 F.3d at 339). By limiting disclosure to Maryland voters, Maryland law "exclude[ed] organizations and citizens of other states from identifying error and fraud," contrary to the NVRA's purposes. *Id*. The court held, "It follows that the State law is preempted in so far as it allows only Maryland registered voters to access voter registration lists." *Id*.

For the same reasons, the Use Ban is preempted. Congress intended for the public to oversee and enforce list maintenance activities. Congress did not exempt some programs or officials from scrutiny. Yet Maine law prohibits the Foundation (and all other persons) from using the Voter File to evaluate legal compliance and identify list maintenance errors (and perhaps fraud) *in all other states*. *See* 21-A M.R.S. § 196-A(1)(J). Maine law is an "obstacle" because it is "something that impedes progress or achievement"[3] of at least two of the NVRA's purposes: "protect[ing] the integrity of the electoral process," and "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4).

The Use Ban is facially invalid because, by its text, it prohibits activities necessary for the achievement of Congress's objectives. The Use Ban also conflicts with the Foundation's

---

[3] https://www.merriam-webster.com/dictionary/obstacle (last accessed Oct. 18, 2022).

10

intended activities, namely, study and evaluation of list maintenance programs in other states. *See* Plaintiff's SMF ¶ 35. If the Foundation uses Maine's Voter File to evaluate, for example, whether New York has removed registrants who have registered to vote in Maine,[4] the Foundation faces severe fines. 21-A M.R.S. § 196-A(5).

Congress tasked states with establishing programs that remove the names of voters who have changed residences. 52 U.S.C. § 20507(a)(4)(B). Congress envisioned that the states would meet this requirement by using the *National* Change of Address database. 52 U.S.C. § 20507(c)(1); *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1840 (2018) (discussing "Postal Service option set out in the NVRA"). The Supreme Court has even acknowledged that "about 2.75 million people are said to be registered to vote in more than one State." *Husted*, 138 S. Ct. at 1838. The Foundation regularly compares state voter rolls in order to identify individuals who appear to be registered in more than one state. *See* Plaintiff's SMF ¶ 30. The Foundation's interstate study of voter list maintenance activities fits squarely within the NVRA's purposes. Because the Use Ban obstructs those purposes, it is preempted and invalid.

### 3.   The Enforcement Ban Is Preempted.

By prohibiting all uses that are not "*directly* related" to "evaluating" Maine's legal compliance, Maine is prohibiting the public, including the Foundation from using the Voter File to enforce the NVRA, including in Maine. 21-A M.R.S. § 196-A(1)(J)(1) (emphasis added). The NVRA's private-right-of-action provision shows Congress plainly intended that the public would enforce the NVRA. 52 U.S.C. § 20510(b). The Enforcement Ban makes Congress's enforcement goals impossible, and it thus plainly conflicts with the NVRA (and possibly the United States

---

[4] Farley, *New York coronavirus exodus fuels 'gangbusters' Maine real estate boom*, New York Post, Oct. 15, 2020, https://nypost.com/2020/10/15/new-york-coronavirus-exodus-fuels-maine-real-estate-boom/ (last accessed Oct. 17, 2022).

Constitution). *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition.").

The Enforcement Ban is facially invalid because by its text it prohibits activities necessary for the achievement of Congress's objectives. The Secretary previously claimed that "enforcement" is "an exercise in 'evaluating'" Maine's legal compliance and such a use would therefore fall within the statute's permissible uses. (Doc. 58 at 20.) The Secretary's statement does not have the force of law. Absent an authoritative interpretation by the Maine Supreme Judicial Court, the Foundation and the public remain at risk.

It is far from clear that the Maine Supreme Judicial Court or any other court could interpret "evaluate" to include "enforce." Those words mean two different things and the drafters chose only the former and added the requirement that all activities be "*directly* related." 21-A M.R.S. § 196-A(1)(J)(1) (emphasis added). The Court's "interpretive task begins with the statute's text" and "[i]f the meaning of the text is unambiguous [the] task ends there as well." *United States v. Godin*, 534 F.3d 51, 56 (1st Cir. 2008). "Evaluate" is not ambiguous.

The Supreme Court instructs that a "Court may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction." *Reno v. ACLU*, 521 U.S. 844, 884 (1997) (quoting *Virginia v. American Booksellers Assn., Inc.*, 484 U.S. 383, 397 (1988)). And it is equally true that "courts should hesitate to extend a statute far beyond its ordinary meaning." *United States v. Safehouse*, 408 F. Supp. 3d 583, 591 (E.D. Pa. 2019). In any event, the courts should "not rewrite a state law to conform it to constitutional requirements," *Am. Booksellers Ass'n*, 484 U.S. at 397, "for doing so would constitute a 'serious invasion of the legislative domain,'" *United States v. Stevens*, 559 U.S. 460, 481 (2010) (quoting *United States*

12

*v. Treasury Employees*, 513 U.S. 454, 479, n. 26 (1995). "To read [Maine law] as the

Government desires requires rewriting, not just reinterpretation." *Stevens*, 559 U.S. at 481.

The Enforcement Ban also conflicts with the Foundation's intended activities, namely, to

use the Voter File to enforce voter list maintenance obligations. Plaintiff's SMF ¶ 35. If the

Foundation uses Maine's Voter File to file an action under the NVRA's private right of action—

like it has done numerous times before, *e.g.*, Plaintiff's SMF ¶ 31[5]—the Foundation faces severe

fines. 21-A M.R.S. § 196-A(5). The Foundation's enforcement of the NVRA fits squarely within

the NVRA's purposes. Because the Enforcement Ban obstructs the achievement of those

purposes, it is preempted and invalid.

### 4. The Make-Available Ban Is Preempted.

Under Maine law, the Voter File's recipient may not:

> Cause the voter information or any part of the voter information that identifies, or
> that could be used with other information to identify, a specific voter, including but
> not limited to a voter's name, residence address or street address, to be made
> accessible by the general public on the Internet or through other means.

21-A M.R.S. § 196-A(1)(J)(2). On its face, the NVRA does not prohibit publication of voter list

maintenance data. In fact, in Section 8(i)(2) Congress made personally identifying information

public—specifically, "names and addresses." 52 U.S.C. § 20507(i)(2). This makes sense because

without personally identifying information one registrant cannot be distinguished from another.

It is unreasonable to think that Congress would *require* the *public* disclosure of voter's names

and addresses while tolerating the state's ability to punish—with crushing fines—the mere

publication of that same information. What is reasonable—and what is consistent with the

---

[5] The Foundation maintains a list of all litigation and other enforcement actions on its "Cases"
page. https://publicinterestlegal.org/cases/ (last accessed Oct. 19, 2022).

NVRA's purposes—is to conclude that Congress believed public disclose of names and addresses to be necessary to achieve the statute's goals.

The Make-Available Ban is invalid primarily because it is a ban on speech that violates the Constitution's First Amendment. U.S. Const. Amend. I. The Make-Available Ban is also preempted because it is an obstacle to achieving the NVRA's purposes. Maine law facially prohibits the re-publication of information that Congress's has made public.

The Make-Available Ban also conflicts with the Foundation's intended activities, namely, to use the Voter File to educate the general public, including through the Internet. Plaintiff's SMF ¶ 35. The Foundation regularly issues reports to educate the public and government officials about voter list maintenance activity nationwide so that others may "monitor[] the state of the voter rolls and the adequacy of election officials' list maintenance programs." *Bellitto*, 2018 U.S. Dist. LEXIS 103617, at *12-13. Plaintiff's SMF ¶ 32. These reports occasionally include *public* records that contain information such as a last name or voter ID number. Plaintiff's SMF ¶¶ 32, 34.

The Make-Available Ban also conflicts with the Foundation's intention to use the Voter File to transmits apparent irregular registration and voting data to election officials throughout the country to help "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4). Those communications are subject to open records laws and by sending them the Foundation is "caus[ing] voter information … to be made accessible by the general public … through other means," in violation of Maine law. 21-A M.R.S. § 196-A(1)(J)(2).

The Foundation's activities fit squarely within the NVRA's purposes. Because the Make-Available Ban obstructs the achievement of those purposes, it is preempted and invalid.

14

### 5. The Fines Are Preempted.

Because each of the challenged restrictions is preempted and unenforceable, the Fines must necessarily be too. Maine may not punish what Congress allows here. It is axiomatic that monetary penalties deter conduct—indeed, it is their purpose—and they are thus plainly an obstacle to Congress's goals. This Court should also find the Fines preempted.

### <u>Conclusion</u>

Maine law is an obstacle to the achievement of the NVRA's purposes. Because there are no material facts genuinely in dispute, the Foundation is entitled to judgment as a matter of law.

Dated: October 19, 2022.

Respectfully submitted,

 /s/ Noel H. Johnson
Noel H. Johnson* (Wisconsin Bar #1068004)
Kaylan L. Phillips* (Indiana Bar #30405-84)
Public Interest Legal Foundation, Inc.
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org
*Admitted pro hac vice*

 /s/ *Steve C. Whiting*
Steve C. Whiting
The Whiting Law Firm
75 Pearl Street, Ste. 207
Portland, ME  04101
Tel: (207) 780-0681
Fax: (207) 780-0682
steve@whitinglawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2022, I electronically filed the foregoing using the

Court's ECF system, which will serve notice on all parties.


 /s/ Noel H. Johnson
Noel H. Johnson
Counsel for Plaintiff
njohnson@PublicInterestLegal.org